## SLEIGHT METALLIC INK CO. v. MARKS.
### No. 4095.

District Court, E. D. Pennsylvania.
March 27, 1930.

E. Hayward Fairbanks, Louis Necho, and Joseph Newman, all of Philadelphia, Pa., for plaintiff.

Joshua R. H. Potts and T. Bertram Humphries, both of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit in equity to restrain the defendant from using the word "Metallic" in connection with the sale of printing ink. The plaintiff bases its action first upon its registration of the word as a trade-mark, and second upon the general ground of unfair competition.

The plaintiff and its predecessor (who, together, will be referred to hereafter as "the plaintiff") have been engaged in the manufacture of printing ink since 1908. From 1908 until 1911 the plaintiff made only those varieties of inks which when used in printing gave the appearance of some metal, such as gold, aluminum, silver, bronze, etc. In 1911 the plaintiff began the manufacture of black ink and inks of various colors and has since expanded its line, so that at the present time it manufactures some two hundred different colors. About 40 per cent. of the varieties made by the plaintiff are inks which give the effect of some metal when used in printing.

The remainder are ordinary inks of various colors and have no metal in them and do not have the appearance of metals when printed.

The defendant has been manufacturing printing ink since 1901. From 1917 until 1925 the defendant was not selling to the general trade but had a contract with the plaintiff by which the plaintiff took his entire output which during that time consisted solely of the liquid medium for mixing ink. Since 1925 the defendant has been selling to the trade generally, his business at all times being confined to inks of the gold, copper, silver, and aluminum type referred to above. He has never sold ordinary black and colored inks.

The plaintiff has traded under the name of "Sleight Metallic Ink Company" since it has been in business, and its goods as sold have always borne the name "Sleight Metallic Ink Company." In 1926 the plaintiff registered the word "Metallic" as a trade-mark under Act March 19, 1920 (41 Stat. 533 [15 USCA §§ 85, 121–128]), after having been refused registration under Act Feb. 20, 1905 (33 Stat. 724), on the ground that the word was descriptive merely. Since the registration of the word as a trade-mark in 1926, it has appeared prominently upon the plaintiff's labels and advertising matter, in addition to its use as part of the plaintiff's corporate name. I cannot find any evidence (except in the file of the proceedings for registration) that prior to 1926 the plaintiff used the word alone as a trade-mark or used it in any manner except either as descriptive of his product or as part of his trade name and corporate name. Since 1926 the defendant has been selling its product as "metallic printing inks," these words being printed upon the labels on its cans.

The first question is as to the plaintiff's rights in the word "Metallic" as a technical trade-mark. It has been noted that the plaintiff was refused registration under the act of 1905. The effect of registration under the act of 1920 is fully considered in Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706, and the conclusion reached that registration under the act of 1920 does not give the registrant even a prima facie title to the word as a trade-mark or trade-name. The statement of the committee, in recommending passage of the bill, was that the act would have no effect upon the domestic rights of any one. I accept the view of the scope of the act of 1920 taken by the court in the Rouss Case. This plaintiff's case, therefore, stands entirely upon the plaintiff's common-law rights, as though there had been no registration at all.

It is fundamental that a word or words descriptive of the goods or some feature of them cannot be appropriated as a trade-mark at common law. It seems to me too clear for argument that as applied to the gold, silver, bronze, copper, and aluminum printing inks the word "metallic" is a purely descriptive term. In fact, it is extremely awkward to refer to these inks as a class without using the word. I agree entirely with the witness Helms that "naturally you would have to almost use the word 'metallic' to describe those varieties of ink." If the testimony in this case be read carefully, it will be seen that it was impossible for both witnesses and counsel to avoid using the word time and again as a purely descriptive term. The words are far more than suggestive merely. Applying a test suggested in Selchow v. Baker, 93 N. Y. 59, 45 Am. Rep. 169, the appropriation of this word by the plaintiff would certainly restrict others from properly describing similar articles produced by them. Having tried to avoid the use of the word in the beginning of this opinion, I shall use it from now on as a general descriptive term.

The printing inks manufactured by plaintiff and defendant are not sold ready mixed. The purchaser buys a powder and a solvent medium or varnish, the two components being sold in separate cans, and mixed just before use. "Metallic inks" are commonly understood in the trade to be those inks which after being used in printing show a metallic luster. They would not necessarily be inks which simulate the metals, but there may be metallic blue or metallic red. In all cases, however, the powder from which the metallic inks are mixed contains a metal base such as copper, brass, aluminum, or gold. When the word "metallic" is applied to such inks— made from a metallic and showing a metallic luster when printed—it is an apt and perfect description of their principal characteristic. If it should be applied to ordinary colored inks which fail to show a metallic luster when printed, it would be deceptive and misleading both as to ingredients and effect—matters which I should think would be of considerable importance to the purchaser. From any point of view, I am satisfied that the plaintiff has no right to the word as a technical trade-mark.

In order to establish his right to restrain the use of a word of this kind upon the ground of unfair competition, it is incumbent upon a plaintiff to show that the word, though not subject to appropriation as a technical trade-mark, has acquired by reason of its long usage in connection with the plaintiff's product a secondary meaning by which it has come to denote the plaintiff as the manufacturer or vender. In such case relief will be afforded if the word be used fraudulently for the purpose of misleading buyers, as to the actual origin of the products or for the purpose of palming off goods of one person as those of another.

I find as a fact in this case that the word "metallic" has not acquired a secondary meaning denoting inks manufactured by the plaintiff, for the following reasons: (1) The evidence is that there is no general, acceptance of the word in the trade as denoting the plaintiff's inks. Three witnesses called by the plaintiff testified that in their minds the word "metallic" would bring up the thought that the ink so described was Sleight's ink, but it is to be noted that of these witnesses, one (Bryan) never bought metallic ink from any one other than the plaintiff, and that another (Smith), when asked whether in the printing trade generally the word was associated with the Sleight Metallic Ink Company, said, "I have always identified it with Sleight metallic ink." A number of witnesses for the defendant testified that the word had no significance to them other than as a description of the product itself. (2) It is also a fact that for many years the trade-name of the plaintiff, Sleight Metallic Ink Company, was known in connection with the sale of inks, and it is entirely possible that the word thus acquired in the minds of some persons in the trade a certain degree of association with the product, but this falls far short of establishing a secondary meaning for the word. (3) The evidence is clear that whatever use the plaintiff made of the word in his trade-name was by no means exclusive. There is evidence that the defendant in his case used it as early as 1910 or 1911. It appears on a billhead used by the defendant in 1916 and prior thereto. It also appears in catalogues of other companies manufacturing metallic ink.

As bearing upon the intent of the defendant to deceive the public and upon the likelihood of any such deception existing, it is also to be observed that the label which the defendant places upon his cans is entirely different from the plaintiff's label. Neither in the size and shape of the can nor in the printed matter or the appearance of the label is there any resemblance.

The evidence fails to sustain the plaintiff's contention, and the bill may be dismissed at the cost of the plaintiff.