## ARMSTRONG PAINT & VARNISH WORKS *v*. NU-ENAMEL CORP. ET AL.

No. 51.   Argued November 7, 8, 1938.—Decided December 5, 1938.

*Messrs. Moses Levitan* and *George I. Haight,* with whom *Mr. George A. Carpenter* was on the brief, for petitioner.

318

*Mr. Edward S. Rogers,* with whom *Mr. William T. Woodson* was on the brief, for respondents. *Mr. Karl D. Loos* entered an appearance for respondents.

MR. JUSTICE REED delivered the opinion of the Court.

The Nu-Enamel Corporation of Illinois filed its bill of complaint in a District Court of the United States in Illinois to enjoin the Armstrong Paint and Varnish Works, a corporation of the same State, from using in the sale of paints, varnishes and similar goods the words "Nu-Beauty Enamel" or any name including the words "Nu-Enamel" or other colorable imitation of plaintiff's registered trade-mark Nu-Enamel or otherwise infringing it; to require an accounting of profits, and to recover treble damages. Pending the litigation, the plaintiff sold its assets to the other respondent, Nu-Enamel Corporation of Delaware, but continued its own corporate existence. The purchaser was permitted to intervene.

The bill showed the registration by the plaintiff of Nu-Enamel under the Act of March 19, 1920, Trade-Mark 308,024, for mixed paints, varnishes, paint enamels, prepared shellacs, stains, lacquers, liquid cream furniture polishes and colors ground in oil. It set out that the name "Nu-Enamel" through wide use by plaintiff had come to mean "plaintiff and plaintiff's products only" and the "word 'Nu-Enamel' is a mark by which the goods of the plaintiff are distinguished from other goods of the same class." There were further allegations that defendant had adopted the name "Nu-Beauty Enamel" with full knowledge of prior and extensive use by plaintiff of "Nu-Enamel"; that as a result of defendant's use of the mark "Nu-Beauty Enamel," merchants passed off defendant's products for plaintiff's, and that the products of both manufacturers were sold in interstate commerce. An exhibit showed that plaintiff used its mark with this slogan printed above it: "The coat of enduring beauty."

Defendant admitted "that the name 'Nu-Enamel' has come to mean and is understood to mean, throughout the United States, including the State of Illinois and the City

of Chicago, the plaintiff and plaintiff's products only, and the word 'Nu-Enamel' is a mark by which the goods of the plaintiff are distinguished from other goods of the same class"; denied the validity, but not the fact or extent of the coverage, of the registration; asserted "Nu-Enamel" was a descriptive and generic term and that it had adopted "Nu-Beauty" in connection with enamel and kindred products before it heard of the trade-mark or trade name "Nu-Enamel." Defendant answered specifically that it marketed only enamels under the designation "Nu-Beauty Enamel" and that it did not market paints and varnishes under this name. The jurisdiction of the court over the subject matter was denied.

The District Court made the following material findings of fact:

"1. Plaintiff and defendant at the time of the filing of the bill of complaint herein were and are now both citizens of the State of Illinois. The intervener, Nu-Enamel Corporation, is a corporation of the State of Delaware.

"2. 'Nu' in 'Nu-Enamel', appearing on plaintiff's label, is a phonetic spelling or misspelling of the English word 'new' and means 'new.'

"3. 'Enamel' is a common English word describing a paint which flows out to a smooth coat when applied and which usually dries with a glossy appearance, and has long been known as such in the paint industry and to the public in general.

"4. 'Nu-Enamel' used in connection with paint or enamel sold by plaintiff means 'new enamel' and is a common and generic term descriptive of the product to which it is applied and of its new or recent origin.

"5. 'Nu' was commonly used in the paint and other industries in combination with other words as a misspelling or phonetic spelling of 'new' to designate brands and kinds of enamel, paint and other commodities before plaintiff and its predecessors adopted the name 'Nu-Enamel.' "

It determined that "Nu-Enamel" was not a valid trade-mark under the Trade-Mark Acts or at common law and, having so determined, refused jurisdiction of unfair competition.

The Circuit Court of Appeals reversed.[1] That court held the trade-mark non-descriptive, valid and infringed. It was of the opinion that the mark had acquired a secondary meaning. It found that the petitioner's conduct enabled merchants to palm off the Armstrong product for "Nu-Enamel" and concluded that the District Court had jurisdiction of the issue of unfair competition. We granted certiorari on account of the importance in trade-mark law of the issues of the descriptive character of the mark and the effect of its acquired meaning under the Trade-Mark Act of 1920.

As the petitioner concedes by answer that "Nu-Enamel" has acquired the meaning of respondent and respondent's products only and is a mark which distinguishes respondent's goods from others of the same class, no evidence or finding is needed to establish that fact. It may be noted, also, that the allegation of the use of "Nu-Beauty Enamel" by Armstrong on products other than enamels, fails of proof. Armstrong uses this mark on enamels only. On other products, there is the mark "Nu-Beauty," followed by some descriptive word, such as paint, varnish or brush.

*Federal Trade-Mark Act of 1920.* The registration of "Nu-Enamel" does not create any substantive rights in the registrant.[2] Trade-marks registered under the 1920

---

[1] 95 F. 2d 448.

[2] *Kellogg Co.* v. *National Biscuit Co., ante,* p. 117, note 3; *Charles Broadway Rouss, Inc.* v. *Winchester Co.,* 300 F. 706, 713, 714; *Sleight Metallic Ink Co.* v. *Marks,* 52 F. 2d 664, on rights it is "as though there had been no registration," p. 665; *Neva-Wet Corp.* v. *Never Wet Processing Corp.,* 277 N. Y. 163; 13 N. E. 2d 755, 759; *Slaymaker Lock Co.* v. *Reese,* 24 F. Supp. 69, 72.

act may be attacked collaterally. *Kellogg Co.* v. *National Biscuit Co.*, 71 F. 2d 662, 666.

The act forbids the unauthorized use of the registered mark in foreign and interstate commerce and adopts the procedural provisions of the Trade-Mark Act of 1905.[3] Through the inclusion of these procedural sections the lower federal courts are given original and appellate jurisdiction of "all suits at law or in equity respecting trade-marks registered in accordance with the provisions of this Act, arising under the present Act" and this Court was given jurisdiction for certiorari "in the same manner as provided for patent cases." [4] Section 19 of the 1905 act vesting power to grant injunctions in trade-mark cases is applicable also to proceedings under the 1920 act. By § 23 former remedies in law and equity are left available. The significant distinction between the two acts is the omission in the 1920 act of the provision of § 16 of the earlier act making the registration of a trade-mark prima facie evidence of ownership.

On its face the act shows it was enacted to enable American and foreign users of trade-marks to register them in accordance with the provisions of the convention for the protection of trade-marks and commercial names, signed at Buenos Aires in 1910. In addition § 1, paragraph (b), provides, without limitation to the export trade, for the registration of marks not registerable under § 5 of the Trade-Mark Act of 1905, after one year's use in interstate or foreign commerce. This enables the (b) marks to be registered abroad.

---

[3] Trade-Mark Act of March 19, 1920, c. 104, § 6, 41 Stat. 535.

[4] Secs. 17 and 18, Fed. Trade-Mark Act of February 20, 1905, 33 Stat. 728–29; §§ 5 and 6, Act of March 3, 1891, 26 Stat. 827–28; § 240a of the Judicial Code confirms this jurisdiction. *Street & Smith* v. *Atlas Mfg. Co.*, 231 U. S. 348, 352. Cf. *Forsyth* v. *Hammond*, 166 U. S. 506, 513.

324

While the act of 1920 does not vest any new substantive rights, it does create remedies in the federal courts for protecting the registrations and authorizes triple damages for infringement.[5] As a consequence of these remedial provisions, when a suit is begun for infringement, bottomed upon registration under the 1920 act, the district courts of the United States have jurisdiction. Unless plainly unsubstantial, the allegation of registration under the act is sufficient to give jurisdiction of the merits. In this case the trial court concluded that the invalidity of the trade-mark divested it of jurisdiction over unfair competition. This was erroneous.[6] Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trade-mark, persists to deal with all grounds supporting it, including unfair competi-

[5] 41 Stat. 534, § 4. "That any person who shall without the consent of the owner thereof reproduce, counterfeit, copy, or colorably imitate any trade-mark on the register provided by this Act, and shall affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several States, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof; and whenever in any such action a verdict is rendered for the plaintiff the court may enter judgment therein for any sum above the amount found by the verdict as the actual damages, according to the circumstances of the case, not exceeding three times the amount of such verdict, together with the costs."

[6] Although we determine later that "Nu-Enamel" is registerable under the 1920 act, it seems appropriate to discuss jurisdiction of unfair competition on a different assumption so that the conclusion of the trial court, corrected but not discussed by the appellate court, will not become a precedent on issues of jurisdiction in trade-mark law. Cf. *Hurn* v. *Oursler*, 289 U. S. 238, 240.

tion with the marked article.[7]  The cause of action is the interference with the exclusive right to use the mark "Nu-Enamel."  If it is a properly registered trade-mark, a ground to support the cause of action is violation of the Trade-Mark Act.  If it is not a properly registered trade-mark, the ground is unfair competition at common law. The facts supporting a suit for infringement and one for unfair competition are substantially the same.  They constitute and make plain the wrong complained of, the violation of the right to exclusive use.

In the *Oursler* case there was a valid copyright which was held not infringed.  Here the trial court determined the trade-mark was invalid.  The *Oursler* case held that where the causes of action are different, the determination that the federal cause fails calls for dismissal.[8]  But where there is only one cause of action we do not consider that the holding of the invalidity furnishes any basis for a distinction between this and the *Oursler* case.  Registration of "Nu-Enamel" furnished a substantial ground for federal jurisdiction.  That jurisdiction should be continued to determine, on substantially the same facts, the issue of unfair competition.[9]

---

[7] *Hurn v. Oursler*, 289 U. S. 238.

[8] *Hurn v. Oursler*, 289 U. S. 238, 248.

[9] Two cases cited in the *Oursler* opinion deal with trade-marks: *Leschen Rope Co.* v. *Broderick Co.*, 201 U. S. 166, and *Elgin Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665.  They are there treated as out of line with the cases holding that facts supporting substantial federal and non-federal questions give jurisdiction to federal courts.  Both state categorically that without a lawfully registered trade-mark a federal court loses jurisdiction when the jurisdiction depends on the trade-mark act.

Where diversity of citizenship exists the issue does not arise. *Warner & Co.* v. *Lilly & Co.*, 265 U. S. 526.  While the diversity is not made plain in the opinion it appears in the record.  No. 32, 1923 Term, Vol. 13, Transcripts of Record 1689.

326

*Registration of Descriptive Mark under 1920 Trade-Mark Act.* Even though under the facts alleged and the admission that respondent's mark has acquired a secondary meaning the federal courts have jurisdiction to determine whether petitioner is chargeable with unfair competition, it becomes necessary to determine whether registration of "Nu-Enamel" is permissible or impermissible under the Act of 1920 in order that it may be known whether § 4, the basis of the prayer in the bill for triple damages, is applicable.[10] Section 1 (b) of the 1920 act permits registration of the marks used for one year in interstate commerce which were not registerable under the Act of 1905 "except those specified in paragraphs (a) and (b) of section 5" of the Act of 1905. That section is set out below.[11] The point raised is whether the phrase

[10] See Note 5, *supra*.

When the trial court concluded the trade-mark was not registerable under the 1920 Act, it dismissed the bill which also sought damages for unfair competition. When the Circuit Court of Appeals concluded the trade-mark was registerable as non-descriptive, it declared that the issue of unfair competition was cognizable in the trial court. It does not appear whether the reason for this holding was because the mark was registerable or because it had acquired a secondary meaning, through extensive use. The lower court does not consider whether the bill alleges registration under the 1920 Act. If the mark is not descriptive it is registerable under the 1905 Act. A mark registerable under the 1905 Act is not registerable under the 1920 Act. 16 Trade Mark Reporter, 93, 530. The language of the 1920 Act permits registration only of marks communicated by the international bureau and those not registerable under the 1905 Act.

[11] "No mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark—

"(a) Consists of or comprises immoral or scandalous matter.

"(b) Consists of or comprises the flag or coat of arms or other insignia of the United States or any simulation thereof, or of any State or municipality or of any foreign nation, or of any design or picture that has been or may hereafter be adopted by any fraternal

"except those specified in paragraphs (a) and (b) of section 5" of the 1905 act is effective to bar not only marks, *contra bonos mores,* under (a) and marks, *infra dignitatem,* under (b) but also the following provisos, particularly the one concerned with descriptive words or devices.

---

society as its emblem, or of any name, distinguishing mark, character, emblem, colors, flag, or banner adopted by any institution, organization, club, or society which was incorporated in any State in the United States prior to the date of the adoption and use by the applicant: *Provided,* That said name, distinguishing mark, character, emblem, colors, flag, or banner was adopted and publicly used by said institution, organization, club, or society prior to the date of adoption and use by the applicant: *Provided,* That trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered: *Provided,* That no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner, or in association with a portrait of the indivdual, or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this subdivision of this chapter: *Provided further,* That no portrait of a living individual may be registered as a trade-mark except by the consent of such individual, evidenced by an instrument in writing, nor may the portrait of any deceased President of the United States be registered during the life of his widow, if any, except by the consent of the widow evidenced in such manner: *And provided further,* That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several States or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant, or his predecessors from whom he derived title for ten years next preceding February 20, 1905: *Provided further,* That nothing herein shall prevent the registration of a trade-mark otherwise registerable because of its being

328

It seems clear that the mark "Nu-Enamel" is descriptive of a type of paint long familiar to manufacturers,[12] with the addition of the adjective new, phonetically spelled or misspelled. Obviously this slight variation from the orthographic normal is not unusual. Numerous

the name of the applicant or a portion thereof. And if any person or corporation shall have so registered a mark upon the ground of said use for ten years preceding February 20, 1905, as to certain articles or classes of articles to which said mark shall have been applied for said period, and shall have thereafter and subsequently extended his business so as to include other articles not manufactured by said applicant for ten years next preceding February 20, 1905, nothing herein shall prevent the registration of said trade-mark in the additional classes to which said new additional articles manufactured by said person or corporation shall apply, after said trademark has been used on said article in interstate or foreign commerce or with the Indian tribes for at least one year, provided another person or corporation has not adopted and used previously to its adoption and use by the proposed registrant, and for more than one year such trade-mark or one so similar as to be likely to deceive in such additional class or classes." U. S. C., Title 15, § 85.

[12] "Enamel or Varnish Paint.—These types of paints dry with a brilliant glossy surface. They are made by grinding the selected pigment, or mixture of pigments, in a varnish medium, and their nature and properties depend on the type of varnish used. A quick-drying variety is made by using a cheap rosin varnish as the vehicle, it dries with a high gloss surface in about 2–4 hours, but owing to the brittle and non-durable nature of the varnish used it is only suitable for interior use. High-class durable enamels, suitable for both inside and outside use, are made by using mixtures of heat-treated linseed oil (stand oil) and elastic copal varnishes as the vehicle. They are slow-drying, taking from 12–18 hours, and are very tough under the severest climatic conditions.

"Flat Paint.—This type of paint is really a flat-drying enamel. It is made in much the same way as the high class glossy enamels, except that it contains less varnish and more turpentine than ordinary enamel. Some varieties contain a proportion of wax dissolved in the varnish so as to give a more perfect mat or flat finish. Owing to their pleasing decorative effect they are used for interior decorations, but are not suitable for outside use." 17 Encyclopedia Britannica (14th ed.) 35.

illustrations of such use by paint and varnish manufacturers are given by petitioner in its answer. The trademark is registered by the Nu-Enamel Corporation for a variety of products from enamels through paint brushes to glue, solder and tack rags. It is quite true that the mark is not descriptive as applied to many of respondent's products but the use by petitioner, the Armstrong Company, of which the Nu-Enamel Corporation complains is the use of "Nu-Enamel" or "Nu-Beauty Enamel." This use, Armstrong answers and the evidence supports the assertion, is confined to the enamels. We must therefore consider the case as though the only products of Nu-Enamel Corporation were enamels. As applied to them it is descriptive.

That the mark is descriptive of paint enamels does not bar it from registration as to them under the 1920 act. This has been the construction of the Patent Office.[13] To

---

[13] Wright Co. v. Sar-A-Lee Co.; 328 Official Gazette 787, 788; Postum Cereal Co. v. Cal. Fig Nut Co., 313 O. G. 454; Opinion of Solicitor, Interior Department, July 13, 1920, 277 O. G. 181, 182:

"In my opinion the recent act of March 19, 1920, as applied to register (b) therein provided should be construed as if it more specifically read as follows:

"'All other marks not registerable under the act of February 20, 1905, as amended, except those specified *as not registerable* in paragraphs or schedules (a) and (b) of section 5 of that act, etc.'

"This is the plain meaning of the law, as it was undoubtedly the intention to continue to deny registration to those marks prohibited registration by paragraphs of schedules (a) and (b) of section 5 of the act of February 20, 1905. In other words, my view is that register (b) provided by the recent act is not intended for any trademark registerable under any part of the act of February 20, 1905, nor for registration of any mark not registerable as specified in paragraphs or schedules (a) and (b) of section 5 of that act. The doubt will be relieved and a rational construction of the law will be subserved by considering the reference in the recent act to 'paragraphs (a) and (b)' of section 5 of the amended act of February 20, 1905, as meaning *schedules a and b* rather than paragraphs strictly and as comprising the following matters specified as not registerable, viz:

construe (b) of the 1920 act to bar names, descriptive marks and merely geographical terms would make the subsection useless. The obvious purpose of its inclusion was to widen the eligibility of marks. A dictum has expressed [14] a view contrary to that of the Patent Office.

This administrative interpretation, contemporary with the legislation, and the legislative history have weight

---

" '(a) Consists of or comprises immoral or scandalous matter.

" '(b) Consists of or comprises the flag or coat-of-arms or other insignia of the United States or any simulation thereof, or of any State or municipality or of any foreign nation, or of any design or picture that has been or may hereafter be adopted by any fraternal society as its emblem, or of any name, distinguishing mark, character, emblem, colors, flag or banner adopted by any institution, organization, club, or society which was incorporated in any State in the United States prior to the date of the adoption and use by the applicant: *Provided*, That said name, distinguishing mark, character, emblem, colors, flag, or banner was adopted and publicly used by said institution, organization, club, or society prior to the date of adoption and use by the applicant.'

"This was the evident intention, as shown by the congressional hearings on the recent act, and with such construction a field will exist for the operation of the new law; otherwise none would remain."

Rule 19 of the Rules of the Patent Office Governing Registration of Trade-marks, issued July 1, 1937, reads as follows:

"A trade-mark must have been actually used in commerce before an application for its registration can be filed in the Patent Office.

"No trade-mark will be registered . . . under the act of February 20, 1905, which consists merely in the name of an individual, firm, corporation, or association, not written, printed, impressed, or woven in some particular or distinctive manner or in association with a portrait of the individual, or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term . . . No trade-mark will be registered under section 1 (b), act of March 19, 1920, which is registrable under the act of February 20, 1905, as amended, or which has not been in *bona fide* use as a trade-mark for one year in international or interstate commerce or commerce with Indian tribes."

[14] *In re Chas. R. Long, Jr., Co.*, 51 App. D. C. 399; 280 F. 975, 977.

"when choice is nicely balanced." [15]   We construe § 1(b) of the 1920 act to be applicable to the categories expressed in § 5 of the act of 1905 under (a) and (b) including the first proviso but not to include the other provisos of (b).   This conclusion is fortified by the addi-

----

[15] *Fox* v. *Standard Oil Co.*, 294 U. S. 87, 96.

On January 21 and 22, 1920, the Committee on Patents of the House of Representatives was considering H. R. 7157 of the 66th Congress, 2nd Session, a bill to amend § 5 of the Trade-Mark Act of 1905. The Commissioner of Patents discussed with the Committee an amendment applicable to H. R. 9023 of the 66th Congress entitled "A bill to give effect to certain provisions of the convention· for the protection of trade-marks." The applicable language is as follows:

"Mr. Newton. Yes. The amendment we propose is this:

" 'All other marks not registerable under the act of February 20, 1905 (as amended), but which for not less than two years have been bona fide used in interstate or foreign commerce, or commerce with Indian tribes, by the proprietor thereof, upon or in connection with any goods of such proprietor and upon which the fee of $10 has been paid and such formalities as are prescribed by the Commissioner of Patents have been complied with, may be registered.'

"Anything may be registered. That is an amendment to the bill that was passed yesterday. That bill does not give prima facie validity to the mark that is registered, the bill that passed yesterday, and this amendment does not give it. That is the reason we put this proposed amendment into the bill. But Mr. Merritt's bill wants to give them prima facie evidence of ownership, so we put that under the 1905 statute where it naturally belongs." Hearings on H. R. 7157 before the Committee on Patents, 66th Congress, 2d Session, p. 30.

Later in the hearing on the bill which became the act of March 19, 1920, this discussion was continued by Mr. Whitehead, Assistant Commissioner of Patents, who discussed the Commissioner's suggested language quoted above and said:

"One or two slight amendments ought, it seems to me, to be made to the bill. The bill as it stands is broad enough to put any mark on the register. Section 5 of the act of February 20, 1905, outlaws— if I may use that expression—two classes of marks—one, scandalous and immoral marks, and the other marks consisting of the flag or coat of arms of the United States, etc., and it seems as if this Senate amendment ought to be amended to exclude those marks specified

tion of the proviso to § 1 (b) of the 1920 act, relating to identical trade-marks. The proviso in § 5 (b) of the 1905 act refusing registration to identical marks in much the same language was construed in *Thaddeus Davids Co.* v. *Davids Mfg. Co.*, 233 U. S. 461, as not permitting the registration of such marks when used for ten years under the fourth, now fifth, proviso of that section. We think that Congress in adopting the corresponding proviso in subsection (b) of the 1920 act, must be taken to have adopted the accepted construction of the similar proviso of the 1905 act. If the language of the 1920 act had been intended to. exclude from registration all the classes excluded by the provisos of § 5 of the 1905 act, it would have been unnecessary to include this proviso.[16]

This Court has had several occasions within the last few years to construe statutes in which conflicts between

---

in paragraphs (a) and (b) of that section. Otherwise there can be put on the register scandalous marks and the flag of the United States. I think it must have been overlooked. I do not think Mr. Merritt or Mr. Newton thought that they were including those two types of marks. It seems as if that could be accomplished by inserting in the amendment, after the words 'all other marks not registerable under the act of February 20, 1905,' the words, 'except those specified in paragraphs (a) and (b) of section 5 of that act,' or words to that effect."

.     .     .     .     .

After discussion of other matters:

"The Chairman. If you will in your brief just make those suggestions, we will be glad to take them up with the conferees.

"Mr. Whitehead. I will be glad to do that. I think the only really important one is to exclude those of paragraphs (a) and (b) of section 5. These others are minor matters." Hearings on H. R. 9023 before the Committee on Patents, 66th Congress, 2nd Session, Part 2, pp. 33–35.

The precise language adopted came from the conference report. Congressional Record, 66th Congress, 2nd Session, p. 4160.

[16] The variations between the two provisos have been treated in practice as immaterial. 277 O. G. 181, 182. Cf. *Thaddeus Davids Co.* v. *Davids Mfg. Co.*, 233 U. S. 461, 467.

reasonable intention and literal meaning occurred. We have refused to nullify statutes, however hard or unexpected the particular effect, where unambiguous language called for a logical and sensible result.[17] Any other course would be properly condemned as judicial legislation. However, to construe statutes so as to avoid results glaringly absurd, has long been a judicial function.[18] Where, as here, the language is susceptible of a construction which preserves the usefulness of the section, the judicial duty rests upon this Court to give expression to the intendment of the law.

*Remedies.*[19] Registration under the 1920 act conferred no substantive rights in the registered mark but it does permit suits in the federal courts to protect rights otherwise acquired in the marks. The 1905 act, § 1, authorizes the "owner" to obtain registration of eligible trade-marks; § 2 requires the applicant to make oath that he "believes himself . . . to be the owner of the trade-mark"; § 5 refers to the "owner of the mark"; § 16 then declares "that the registration of a trade-mark under the provisions of this act shall be prima facie evidence of ownership"; § 23 reserves all remedies at law or in equity which any party aggrieved by the wrongful use of his trade-mark would have had without the act of 1905.

The 1920 act omits the quoted portion of § 16 as to the effect of registration as prima facie evidence of ownership. Under § 1 the register includes all marks communicated to the Commissioner of Patents by the international bureaus provided for by the Buenos Aires convention of 1910

---

[17] *Caminetti* v. *United States,* 242 U. S. 470, 485; *Crooks* v. *Harrelson,* 282 U. S. 55, 58–59; *Taft* v. *Commissioner,* 304 U. S. 351, 359.

[18] *Sorrells* v. *United States,* 287 U. S. 435, 446, *et seq.* and cases cited; *United States* v. *Ryan,* 284 U. S. 167.

[19] Since neither party has relied upon state law, we do not consider any effect it might have on our conclusions. Cf. *Kellogg Co.* v. *National Biscuit Co., ante,* p. 111.

and all other marks not registerable under the Trade-Mark Act of 1905, with the exceptions discussed in the preceding section of this opinion, in bona fide use by the proprietor thereof for one year in commerce other than intrastate. Section 4,[20] which protects the trade-mark, is substantially the same as § 16 of the 1905 act, except for the omission of the prima facie presumption of ownership. It is the owner who has the rights of action under this act, unaided by any presumption from registration. The owner, on the other hand, is not limited in any way by the act, as § 23 of the act of 1905 is made specifically applicable. This section preserves the legal and equitable remedies to an aggrieved owner. The Committee on Patents in the Senate was quite positive that the effect of the act on domestic rights was nil.[21] The registrant acquires by the acceptance of his mark under the 1920 act the right to proceed in the federal courts against infringers and to recover triple damages if he can establish his ownership of the trade-mark at common law.

"Nu-Enamel" is descriptive of the enamels in issue. The use on the numerous other articles of respondent's manufacture, in its advertising, on store window valances, on electric and other displays, and as the name of many stores and the sign of several thousand dealers, justify petitioner's concession that the name means respondent and respondent's products only and the word distinguishes

---

[20] See Note 5, *supra*.

[21] "This legislation has no effect on the domestic rights of anyone. It is simply for the purpose of enabling manufacturers to register their trade-marks in this country for the purpose of complying with legislation in foreign countries, which necessitates registration in the United States as a necessary preliminary for such foreign registration. As the law now stands, it enables trade-mark pirates in foreign countries to register as trade-marks, the names and marks of the American manufacturers, and thus levy blackmail upon them." Senate Report No. 432, 66th Congress, 2nd Session, p. 2. Cf. *Charles Broadway Rouss, Inc.* v. *Winchester Co.*, 300 F. 706, 714.

its goods from others of the same class. But a mark which is descriptive is not a good trade-mark at common law.[22]

It was said in *Thaddeus Davids Co.* v. *Davids Mfg. Co.*[23] that names registered under the last proviso of § 5 of the 1905 act became technical trade-marks upon valid registration under that act. Assuming that descriptive terms in this respect would be analogous to proper names, there are clear distinctions between the acts. The 1920 act does not define "trade-mark" to include any mark registered under its terms, as does § 29 of the 1905 act. Remedies are afforded registrants under the 1920 act but these remedies are for "owners," and actual and exclusive use, short of a secondary meaning,[24] does not qualify a registrant under the 1920 act as an owner. That ownership must be established by proof.[25] Unless this ownership is established, no rights of action under the 1920 act for infringement exist. Here we have a secondary meaning to the descriptive term, "Nu-Enamel." This establishes, entirely apart from any trade-mark act, the common law right of the Nu-Enamel Corporation to be free from the competitive use of these words as a trade-mark or trade name.[26] As was pointed out in the *Davids* case, in considering the ten-year clause of the 1905 act, this right of freedom does not confer a monopoly on the use of the words. It is a mere protection against their unfair use as a trade-mark or trade name by a competitor seeking

[22] *Warner & Co.* v. *Lilly & Co.*, 265 U. S. 526, 528; *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.*, 220 U. S. 446, 453; *Elgin Nat. Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665, 673.

[23] 233 U. S. 461, 466, 468, 469, 470.

[24] Cf. *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.*, 220 U. S. 446, 461. The language in that case, denying to a descriptive term the effect of a trade-mark, is inapplicable for the reason that the descriptive term had not acquired a secondary meaning.

[25] Cf. *Charles Broadway Rouss, Inc.* v. *Winchester Co.*, 300 F. 706, 713.

[26] *Thaddeus Davids Co.* v. *Davids Mfg. Co.*, 233 U. S. 461, 470, 471.

336

to palm off his products as those of the original user of the trade name. This right to protection from such use belongs to the user of a mark which has acquired a secondary meaning. He is, in this sense, the owner of the mark. We agree with the conclusion of the Circuit Court of Appeals that infringement is shown.

The rights of Nu-Enamel Corporation to be free of the competitive use of "Nu-Enamel" may be vindicated, also, through the challenge of unfair competition, as set out in the bill. The remedy for unfair competition is that given by the common law. The right arises not from the trademark acts but from the fact that "Nu-Enamel" has come to indicate that the goods in connection with which it is used are the goods manufactured by the respondent. When a name is endowed with this quality, it becomes a mark, entitled to protection. The essence of the wrong from the violation of this right is the sale of the goods of one manufacturer for those of another.[27]

The questions as to damages, profits, and the form of the decree will be passed upon more appropriately by the trial court. The decree of the Circuit Court of Appeals reversing the decree of the District Court is affirmed and this cause is remanded to the District Court with directions to proceed in conformity with the opinion of this Court.

*Affirmed.*

[27] *Elgin Nat. Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665, 674.