**CARLSON v. BETMAR HATS, Inc., et al.**

District Court, S. D. New York.
July 27, 1942.

Charles Sonnenreich, of New York City, for plaintiff.

Harry Price, of New York City (Lester Gutterman, of New York City, of counsel), for defendants.

CONGER, District Judge.

This action arises out of plaintiff's alleged invention of an adjustable lady's hat, which he claims has been copied and sold to the trade by defendant, Betmar Hats, Inc., of which defendant Murray Marks was and is the president and director.

Plaintiff for a number of years has been engaged in the hat business as designer and cutter.

Defendant corporation is in the business of manufacturing and selling ladies' hats to the trade.

Plaintiff applied for and subsequently was granted letters patent No. 2,156,251 under date of April 25, 1939. The patent issued for "an alleged new and useful improvement in adjustable and washable Ladies Hats."

Plaintiff claims that he had been working on an idea for an adjustable lady's hat; that he went to a lawyer (January, 1938) and retained him to prepare papers of application for a patent to cover his ideas and claimed invention (this application was filed in the Patent Office on February 15, 1938); that on March 8, 1938, he went to a large millinery firm and tried to interest them in his idea; that he was sent by them to the defendants; that the same day he went to defendants' place of business and talked with defendant Murray Marks and showed him a sample of the hat and the sketch thereof which accompanied the patent application; that he told Marks he had applied for a patent and that the disclosure must be kept secret and confidential; that Marks was interested; that he and Marks discussed the royalties to be paid if Marks became interested; that Marks sent plaintiff to M. Grossman & Sons (who conduct the factory for defendant corporation) to have samples made; that he then did go to the factory and was there for several days; that he had three samples; that he was told at the factory that he would be notified if defendants were interested in the hat; that both at the factory and at the place of business of defendant corporation it was agreed that his disclosures were to be kept secret and that if defendant corporation used hats of plaintiff's design he was to be paid a royalty; that he heard nothing further from defendants and that his samples were never returned to him although demanded; that subsequently and on or about June or July of 1938 he saw hats of defendants manufacture on sale in a store window in New York and that these hats were copies of his hat and infringed his patent; that since then defendant corporation has been selling these hats to the trade generally; that subsequently he learned that defendants had applied (April 2, 1938) for a patent on adjusted hats which was granted on June 28, 1938. He claims that this patent embodies hats which infringe his.

Defendants deny most of the facts and contentions above set forth. They do admit that plaintiff came to defendant corporation's place of business; that he had with him a sample hat and a sketch; that he was trying to interest defendant in his claimed invention and idea of a ladies adjustable hat; that defendant Marks sent him to the factory to make a model from the sketch of the hat; that plaintiff did so; that at least one model was made and that those in charge of the factory informed plaintiff that they were not interested but would send it back to defendant Marks for his consideration; that subsequently defendant Marks saw plaintiff and told him that defendants were not interested in plaintiff's hat; that it had no commercial

value. They deny that there was ever any tentative agreement to pay royalties. They deny that they used plaintiff's idea, but claim that they had been interested in and making adjustable ladies hats for some time before plaintiff came to them. They claim plaintiff's hat is not novel and his patent void for want of invention.

They do not deny of course that the application for and allowance of the patent which was issued on June 28, 1938.

The first cause of action is one for infringement of the Carlson patent No. 2,-156,251 and joined therein in the same count is a claim for damages for violation of a confidential disclosure and for an accounting of the profits realized as a result of the breach of that agreement.

I shall take up the question of infringement first.

Claim four of plaintiff's patent is the only claim which defendant is charged with infringing.

That claim calls for a lady's adjustable and washable hat adapted to be opened and flattened for pressing purposes, a flexible crown having an opening therein, a discontinuous brim with means at the base of the crown of adjusting the effective head size of the crown and brim. This latter is accomplished by two end portions which overlap each other with a loop on one end of one portion engaging the other portion and maintaining said end against displacement and means for adjusting the said portion and means for holding them together when adjusted.

The whole merit in plaintiff's idea, if any, is the adjustability of the hat so that it may be accommodated to various head sizes.

An examination of the exhibits purporting to show the prior art and the state of the art convince me that plaintiff may not be given credit of an invention. Adjustable hats and head pieces were long known in the art. Down through the years there have been a number of so-called inventions of adjustable hats, some a bit crude, others less so. I cannot say that Carlson's device for an adjustable hat is anything more than a mere exercise of the skill of the calling. An advance plainly indicated by the prior art. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 40, 86 L.Ed. 58.

Whether a buckle is used with a loop or a slit in a tab with or without buttons, whether a crown is open or slit or flexible, whether the hat is washable or not, all these are mere matters of mechanical detail.

Carlson was a man skilled in the art. At the most all one can say is that Carlson added something to the prior art which made it a bit more useful perhaps. That does not make the result patentable. Cuno Engineering Corp. v. Automatic Devices Corp., supra.

"Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense is not patentable. * * * The new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain." Cuno Engineering Corp. v. Automatic Devices Corp., supra.

Carlson's adjustable hat may not be called a flash of genius; it is the result of the skill of the calling.

I therefore hold Carlson patent No. 2,156,251 void for lack of invention.

In view of my holding it will be unnecessary for me to pass on the question of infringement.

In the first count of the complaint there is another cause of action or claim for relief or damages. for unfair competition based on an alleged breach of a confidential disclosure. There are really two causes of action set forth in one count. The fact that the liberal pleading allowed in Federal Courts permits their joinder in one count does not change the situation.

The first cause of action is for patent infringement which is a federal question, the second is really based on a contract and is a non-federal question. There is no diversity of citizenship here. The plaintiff contends that even though he may fail on the patent infringement issue the Court still has jurisdiction to determine the question of unfair competition arising out of the breach of a confidential disclosure. I think not. The rule is well settled that where the two issues i.e. patent infringement and unfair competition are based upon substantially the same facts, if the first fails the court may proceed to adjudicate the second. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Musher Foundation, Inc., v. Alba Trading Co., Inc., 2 Cir., 127 F.2d 9,

decided March 23, 1942; Treasure Imports, Inc., v. Henry Amdur & Sons, Inc., et al., 2 Cir., 127 F.2d 3, decided March 9, 1942; Lewis v. Vendome Bags, Inc., 2 Cir., 108 F. 2d 16.

I am satisfied that there is in the first cause of action in the complaint two separate causes of action (1) for patent infringement, (2) for unfair competition based on a breach of contract not to use or take advantage of alleged secret disclosures made to defendants by plaintiff without plaintiff's consent or payment of royalties to him.

The test as laid down in the Hurn case and in the other cases cited is whether there is one cause of action with different grounds for relief or whether there are independent causes of action. I find the latter situation here. Different facts are needed to support the claim of unfair competition than are needed to sustain the claim of infringement. The two causes of action here presented are not based upon substantially the same facts. See Snell, Inc., v. Potters, 2 Cir., 88 F.2d 611. I am not unmindful of the opinion in the case of Picard v. United Aircraft Corporation, 2 Cir., 128 F.2d 632, decided May 28, 1942. Neither is my holding herein contra to that decision. I do not mean to say that as pleaded plaintiff's second cause of action in the first count is bad. I say it fails because of lack of jurisdiction. I have examined the record in the Picard case and I find that the question of jurisdiction was never raised; as a matter of fact the record does show that there was diversity of citizenship between the parties.

On the question of unfair competition I do not base my decision entirely on this highly controversial legal proposition. I find against the plaintiff on the facts. The plaintiff was practically alone in the presentation of his claim and he was contradicted by a number of witnesses produced by defendants. Some bits of defendant's evidence did tax my credulity. On the whole, however, plaintiff has failed to convince me that under a promise of secrecy he revealed to defendants the idea or design of an adjustable hat and that defendants copied and appropriated this design and manufactured hats in accordance with the said design and sold them to the trade under the name and ownership of the corporate defendant, without in any way compensating plaintiff.

Heretofore I have set forth generally the facts upon which plaintiff based his claim as well as the facts upon which defendants based their defense. It will not be necessary to repeat them further except in so far as it may be necessary to refer to them to show the reasons for my conclusions of fact.

Defendant claimed that they were interested in an adjustable hat for some time prior to meeting plaintiff, in fact since 1936. The proof on this is not too strong. Exhibit Y introduced to prove this is not satisfactory proof. There is no claim in the "ad" that the hats so advertised were adjustable. There is no documentary evidence to corroborate defendant's contention in this respect. However, there is evidence from the defendant Marks that prior to January 1, 1937, they were experimenting in adjustable hats preparing to put on the market hats similar to the style which plaintiff demonstrated to defendant. Grossman, the manufacturer, so testified, as did one Adler, a designer for Grossman, who testified that he made up such models prior to January 1, 1938.

Defendant Marks testified that the button adjustable hat complained of by plaintiff was in finished form at the end of 1937 ready to be shown to buyers in January and February for delivery in April and May of 1938. The fact that no documentary evidence of any kind was introduced to bear out this testimony would tend to weaken it. What doubts I had, however, were dispelled by the testimony of four buyers for reliable department and millinery stores. They all testified that in January and February of 1936, Marks showed them the button adjustable hat complained of by plaintiff as the design which defendants stole from him. If these witnesses were correct, they saw the hat before plaintiff went to defendant (March 8, 1938). I have no reason to doubt their story. These were buyers experienced in the trade; they were positive in their testimony. They appeared to me to be highly credible witnesses. One of them, Matthew Hyland, said he recalled definitely that it was in January, 1938, he saw the hat; that he was then on his way to Havana and stopped in to look at some hats and then saw this hat. Another witness, Mrs. Mildred Hill, buyer for Lord & Taylor, said she was shown the hat by Marks in January, 1938. That she was then buying for the summer trade; that on May 1, 1938, Lord & Taylor ran an ad,

which she prepared, announcing these hats for sale. It should be noted that plaintiff claims he first learned of the sale of these hats by seeing them in the window of Lord & Taylor.

[6] I see no reason to disregard the testimony of these four witnesses and therefor accept their evidence as true. That being so, it is proof positive that defendants had in their showrooms these button adjustable hats at least prior to March 8, 1938, and therefore did not get the idea from plaintiff.

In the original complaint in the second count and in the supplemental complaint plaintiff asks for other relief against the defendant. The relief asked for in each count is identical except that each is addressed to a different patent of defendants. One is addressed to design patent No. 110,-254 of defendant's and the other to patent No. 2,185,306.

■ These causes of action are based upon the Declaratory Judgment Act, 28 U. S.C.A. § 400, and ask that the Court decree the rights of the parties with respect to these Betmar patents. This court has jurisdiction of these causes of action.

Plaintiff's allegations as to these claims are to the effect that plaintiff was the first inventor of a design and mechanical construction of an adjustable hat. That he disclosed the invention to Marks and Grossman in confidence and that then Marks applied for a design patent and later for a mechanical patent covering the disclosure.

Plaintiff also as additional relief, in connection with these causes of action, asks that he be declared the equitable owner of these patents, and that defendants account to him for any profits had from the sale of hats made after the design of these patents.

Since I have found against the plaintiff on the question of the validity of his patent and have found against him on his cause of action for unfair competition, it necessarily follows that I must find against him on these two causes of action. I have already found against the plaintiff on the facts which he must prove to sustain these last two causes of action.

Plaintiff has also raised the question in a reply to a counterclaim as to the validity of Betmar patent No. 2,185,306. Plaintiff claims double patenting because of the issuance to defendant of design patent No. 110,254.

■ I am not passing on this question. Because of my holding herein that issue is moot.

Defendants have counterclaimed for declaratory judgment with respect to other patents owned by plaintiff. These patents were not involved here. I am not passing on this counterclaim. I regard it as no part of the issue here. Defendants offered no proof to sustain the counterclaim and have not mentioned it in their brief.

Judgment for defendant as outlined above with costs.

If findings of fact and conclusions of law are submitted, they should be triple-spaced typed, and on five days' notice. The opposing counsel, if he be so disposed, should submit, on two days' notice, criticisms of the proposed findings, as counter findings will avail him nothing.