## KITTY KELLY SHOE CORPORATION v. STALLINGS et al.

### No. 7301.

United States District Court
E. D. Michigan, S. D.

June 28, 1949.

Charles Rubiner, Detroit, Mich. (John P. Chandler, New York City, of counsel), for plaintiff.

Monaghan, Hart & Crawmer, Detroit, Mich. (I. Joseph Farley, Detroit, Mich., of counsel), for defendants.

LEDERLE, Chief Judge.

1. Plaintiff is a New York Corporation, and defendants are citizens of Michigan and residents in this district. The amount in controversy exceeds $3,000.00, exclusive of interest and costs. The complaint charges the defendants with infringement of three registered trade-marks and unfair competition. It seeks an injunction and an accounting for profits and damages. The defendants filed a counterclaim for an injunction to restrain the plaintiff from unfair competition, basing their claim upon their alleged common-law rights in the name of Kitty Kelly Shop.

2. The plaintiff is the successor to the copartnership of Stern and Kellner and is the owner of the following United States trade-mark registrations:

(a) No. 289,764, issued under the Trade Mark Act of March 19, 1920, 41 Stat. 533. The application (Serial No. 310,456) was originally filed January 27, 1931 under the Trade Mark Act of February 20, 1905, 33 Stat. 724, for a mark consisting of the words "Kitty Kelly", and therein the applicant, Stern & Kellner, alleged use of such mark since October 1, 1930. The application for registration of the mark under the Act of 1905 was denied by the Patent Office on the ground that "the trade mark consists of the name of an individual which is considered not to be distinctively displayed". In an amendment filed October 14, 1931, the applicant acquiesced in

this rejection by the Patent Office and converted the application to one under the Trade Mark Act of March 19, 1920. This application was allowed by the Patent Office November 6, 1931, and registration issued December 1, 1931 covering the use of the mark for "shoes, slippers, and sandals, all of which are made of leather, cloth, and combinations of leather and cloth; rubbers, overshoes, and hosiery" in Class No. 39, Clothing.

(b) No. 365,776, issued under the Trade Mark Act of February 20, 1905. The application (Serial No. 368,334) for this registration was filed by the plaintiff August 15, 1935, for a mark consisting of the words "Kitty Kelly". The Patent Office again refused registration on the ground that the mark "is the name of an individual * * * made up of a common Christian name and a common surname * * * not distinctively displayed". The application was then amended to incorporate the designs and style of lettering displayed in Exhibit "B", attached to plaintiff's complaint. The application was then allowed by the Patent Office, February 23, 1939, and registration issued March 21, 1939 covering the use of the mark for "traveling bags, handbags, trunks, pocketbooks, suitcases bill-folds, portfolios, and traveling kits—namely bags or rolls for holding toilet or other articles for traveling" in Class No. 3, Baggage, animal equipments, portfolios, and pocketbooks.

(c) No. 369,898, issued under the Trade Mark Act of February 20, 1905. The application (Serial No. 414,601) was filed January 7, 1939, by plaintiff for a mark consisting of the words "Kitty Kelly" distinctively displayed as shown in plaintiff's Exhibit "A". The application was allowed by the Patent Office July 12, 1939, and registration issued August 8, 1939, covering the use of the mark for: "Men's, women's, and children's shoes of leather, fabric, rubber, and cloth, and combinations of these materials, also spats, heels, and inner and outer soles, uppers, tongues, toe caps, hosiery, rubbers and overshoes" in Class 39, Clothing.

3. Plaintiff also sought to register its trade-mark with the Secretary of State of Michigan on August 20, 1935, in accordance with the provisions of Section 8974 of the Compiled Laws of 1929, Section 18.-635, Michigan Statutes Annotated.

4. Since 1931 the plaintiff has been engaged in the retail sale of ladies' shoes, hosiery, handbags, and millinery. At the time of the trial, it was operating 24 stores located in the states of New York, Connecticut, New Jersey, Pennsylvania, Maryland, Ohio, Illinois, Florida, and the District of Columbia. Its gross sales at the present time are approximately eight million dollars per year. Approximately 75 per cent of its sales are shoes, and the balance other merchandise. It has operated all of its stores under the name of "Kitty Kelly Shoe Stores." When the corporation was organized, it had seven stores located mainly in the immediate vicinity of New York City. From the outset, the management of the corporation contemplated a program of expansion with the object in view of having a store in all of the main markets of the United States. With this end in view, it attempted to have its trade-mark registered in the various states. From time to time, it has sought a location in Detroit, but has never been successful in securing such a location and has never operated a retail outlet in Detroit. It has never sought authority to do business as a foreign corporation in Michigan.

5. From the beginning shoes sold by the plaintiff were stamped or labeled with the trade-mark "Kitty Kelly", and the containers in which the shoes were delivered to the customers also bore the name "Kitty Kelly." In the vicinity in which the stores were operated, the business has progressively increased, and it seems likely that the name "Kitty Kelly" in such localities has acquired a secondary meaning.

6. The shoes sold by the plaintiff were all in the low-priced field. In order to reach customers who would be interested in purchasing shoes in this field, the advertising was almost entirely in daily papers, circulated in the cities in which the stores were located. The principal advertising medium has been the New York Daily News. There was an insignificant number of these papers circulated in Michigan. The plaintiff did

818

some mail order business. There is no evidence that any such mail order business originated in Michigan. At the date of the trial, the plaintiff owned a store in Akron, Ohio, which is approximately 200 miles from Detroit, and another one in Chicago, which is approximately 250 miles from Detroit. These stores were the only stores located in the Midwest, and were the nearest to Detroit. There is no evidence that either one of these stores had any Michigan customers. In 1945, the plaintiff sold to a Detroit department store some of its shoes bearing the trade-mark, and in turn these shoes were advertised locally by this department store. Prior to the sale of the Kitty Kelly shoes to the local department store, there is no evidence that any one ever associated the name "Kitty Kelly" with the plaintiff's business in Michigan.

7. The name "Kitty Kelly Shop" was first used in connection with a women's wear department conducted by the defendants' predecessors, Kelly Furniture Company, early in 1933. From the beginning, defendants' predecessors used cardboard boxes and paper wrapping bags, bearing the imprint of a girl wearing a bonnet, an old fashioned hoopskirt, and holding a Scottie dog on a leash, superimposed over the words "Kitty Kelly Shop." In 1940, the women's wear department was moved to a separate location one block from the original location. From the beginning of 1933, up to the present date, signs reading "Kitty Kelly Shop" were displayed prominently on the outside of the building in which the business was conducted. Since August, 1934, defendants and their predecessors at all times had on file a certificate indicating that they were conducting business under the assumed name of the "Kitty Kelly Shop", and this certificate was renewed from time to time as the assets and good-will of the business were transferred from one owner to the next in its chain of title.

8. The defendants' present store is located on Woodward Avenue, in the City of Highland Park, Michigan, which city in turn is completely surrounded by the City of Detroit, Woodward Avenue is a main thoroughfare which runs from downtown Detroit northward to the densely-settled suburban districts. The traffic on Woodward Avenue is extremely heavy, and originates in the entire metropolitan area.

The defendants have expended large sums of money in direct mail advertising, in handbill distribution, and in church and local publications, mainly in the Detroit metropolitan area, and they have also advertised throughout the State of Michigan.

From the beginning, the defendants and their predecessors have stressed quality, distinctiveness and style in their merchandise. They have never sold shoes. The hosiery sold by the defendants belongs in an entirely different price range than that sold by the plaintiff. As a result of the advertising and the merchandising practices of the defendants and their predecessors, they have established a valuable good-will, and the name "Kitty Kelly Shop" has acquired a secondary meaning, and it identifies the defendants' business in this area.

9. At the time the defendants and their predecessors adopted and used the name "Kitty Kelly Shop", they had no notice or knowledge of the plaintiff's use of the name "Kitty Kelly." The name "Kitty Kelly Shop" was adopted in perfect good faith, and with no design to profit from any good-will that may have attached to that name because of the activity of the plaintiff. Evidence produced by both parties established the fact that if the name "Kitty Kelly" is used in the same area, confusion will result.

10. The defendants have not competed with the plaintiff, and obviously there is no unfair competition involved, so far as the plaintiff is concerned.

11. There is no evidence that the defendants ever used any of the plaintiff's trade-marks, or that they ever sold any goods with labels attached in which the words "Kitty Kelly" were used. In other words, there is no evidence of trade-mark infringement.

12. The plaintiff has failed to prove that its trade-mark has acquired a secondary meaning in this area, but, on the other hand, the defendants have established that the name "Kitty Kelly Shop" has acquired such a secondary meaning, and such secondary meaning has come to identify the establishment of the defendants.

## Conclusions of Law

1. Plaintiff's registration No. 289,764, issued pursuant to the Trade Mark Act of March 19, 1920, has no effect on the common-law rights of the parties to this action, Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, 666; 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, and the plaintiff can claim no substantive rights because of said registration, Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195, and the Trade Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., does not give the plaintiffs any such substantive rights. Neither do the plaintiff's registrations 365,776 and 369,898, issued in 1939, give the plaintiff any such substantive rights. It likewise acquired no substantive rights by its Michigan registration filed in accordance with the provisions of Compiled Laws of 1929, Section 8974, Sec. 18.365, Michigan Statutes Annotated.

2. The defendants are the owners of a trade-name "Kitty Kelly Shop", and are entitled to the exclusive use of that name in this area. The evidence establishes that if the plaintiff is permitted to use the name "Kitty Kelly" in the conduct of a business in competition with the defendants in the Detroit Metropolitan area, confusion will result, and the defendants are entitled to an injunction restraining the plaintiff from the use of that name, and from competing unfairly with them in the Metropolitan Detroit area.

## Judgment

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered and adjudged that

1. The plaintiff is the exclusive owner of Trade Mark No. 289,764, issued under the Trade Mark Act of March 19, 1920; and

The plaintiff is the exclusive owner of Trade Mark No. 365,766, issued under the Trade Mark Act of February 20, 1905; and

The plaintiff is the exclusive owner of Trade Mark No. 369,898, issued under the Trade Mark Act of February 20, 1905.

These respective trade marks are valid in accordance with the respective Acts under which they were registered.

2. There has been no infringment of the said trade-marks by the defendants.

3. The plaintiff, its officers, agents, attorneys, clerks, servants, workmen and employees, and all holding through or under the plaintiff, acting directly or indirectly, and any purchasers, successors, assigns or licensees to the rights and interest of the plaintiff are permanently restrained and enjoined:

(a) From using or employing the words "Kitty Kelly" or any other trade-mark or trade-name or combination containing such words in advertising in any form feminine clothing or attire and accessories pertaining thereto, in the State of Michigan, except, however, as advertisements in newspapers outside the State of Michigan may be circulated by the publishers thereof within said state, and except further, as the trade-mark use of the words "Kitty Kelly" by plaintiff on goods shipped by it into the State of Michigan shall serve an advertising function; and

(b) From using or employing the words "Kitty Kelly" or any other trade-mark or trade-name or combination containing such words in designating or advertising in any form any store which may now or hereafter be established by the plaintiff in the State of Michigan; and

(c) From representing, asserting or implying, directly or indirectly, that any store now owned or controlled by the plaintiff in the State of Michigan, or which may hereafter be owned or controlled by it in said state, is connected with or identified with the store owned and operated by the defendants.

The plaintiff will be free to sell its trade-marked products in the State of Michigan either to retailers or directly to consumers, provided, it shall not use the words "Kitty Kelly" in connection with its business of selling feminine wearing apparel and/or accessories pertaining thereto, including women's shoes and handbags, in said state other than by affixing such words directly to the products which it sells.

4. In conformity with Sec. 34, Pub.Law 489, 79th Congress, Chap. 540, 2d Sess., Title 15 U.S.C.A. § 1116, the clerk of this Court is hereby ordered to forward to the

Commissioner of Patents, United States Patent Office, a certified copy of this judgment for inclusion in the file wrappers of registration numbers 289,764, 365,776 and 369,898.

It is further ordered that the costs herein, to be taxed, shall be paid by the plaintiff to the defendants.