VISCHER PRODUCTS CO. v. NATIONAL PRESSURE COOKER CO.

Civil Action No. 1310.

District Court, W. D. Wisconsin.

July 3, 1948.

For former opinion see 71 F.Supp. 973.

Spohn, Ross, Stevens & Lamb, of Madison, Wis., and Hinkle, Horton, Ahlberg, Hansmann & Wupper, of Chicago, Ill., for plaintiff.

Francis J. Wilcox and Phillip Breitman, both of Eau Claire, Wis., Samuel H. Maslon, of Minneapolis, Minn., and Haight, Goldstein & Hobbs, of Chicago, Ill., for defendant.

STONE, District Judge.

In this action the defendant is charged with infringing the plaintiff's patent, No. 2,301,724, entitled "Pressure Relief Device" used as a "blow-out" plug on pressure cookers.

At the original trial plaintiff relied upon Claims 6, 7, 8, 9 and 10. This Court found all of these claims invalid for want of invention and also because they contained functional limitations without adequate description of structure. Claims 8, 9 and 10 were held invalid on the further ground that each of them was drawn to an exhausted combination. Judgment was entered for defendant, as reported 71 F.Supp. 973.

Plaintiff appealed from the judgment and at the same time filed a disclaimer in the Patent Office, disclaiming Claims 8, 9 and 10 of the patent in issue. Thereafter, on plaintiff's petition and pursuant to leave granted by the Circuit Court of Appeals, this Court requested remand of the record and ordered the judgment vacated and the cause re-opened to receive newly discovered evidence relating to admissions made by defendant in the Wittenberg Patent No. 2,429,149, which was issued to defendant on October 14, 1947, and after judgment was entered in this cause and the appeal taken therefrom by plaintiff.

Plaintiff contends that the patent issued to defendant contained admissions relating

to the validity of the plaintiff's patent and its infringement by defendant that were inconsistent with defendant's contentions at the trial, and with the findings of fact filed by the Court.

These alleged admissions made by defendant before the Patent Office are as follows: ."In the operation of such pressure devices as, for example, pressure cookers, it is extremely important that some safe and reliable means be provided in the construction thereof for preventing excessive pressures from developing within the cooker, which if not promptly released before it reaches a dangerous valve, may cause serious damage to the cooker and adjacent property and possible injury to an attendant stationed at or near the cooker."

That the pressure relief device "should be so constructed that they may readily be restored to their normal operating condition in the wall of the pressure chamber or cooker."

In describing defendant's device its patent says:

"The novel pressure release device herein disclosed is extremely simple and inexpensive in construction and may readily and quickly be inserted in the opening provided in the wall of the container by an inexperienced person, should it accidentally be sufficiently distorted from excessive pressure within the pressure chamber to cause it to be blown from the wall of the chamber."

"The novel safety or pressure release device herein disclosed is shown comprising a disc-like element 5 which preferably is formed from a suitable soft synthetic rubberlike material such as 'Neoprene' or similar material which has the inherent characteristics of withstanding high temperatures and is highly resistant to the deterioration by oils and greases such as contained in various foods."

That when excessive pressure develops within the cooker "The sealing element 5 may become distorted as shown in Fig. 4 as a result of the pressure within the cooker until it eventually is blown through the opening 13 whereby the interior of the cooker is suddenly opened to the athmos-phere through the aperture 8 and opening 13, as will be understood by reference to Fig. 4."

Plaintiff also contends that defendant at the trial maintained that synthetic rubber used by plaintiff in the construction of its pressure plug was not a basis for its patentability; that before the Patent Office it contended otherwise.

As the original trial progressed it undoubtedly became apparent to plaintiff that there was no merit in its claim of patentability of its safety device, based on the structural difference of rubber, and it abandoned that contention. Vischer did not discover or invent synthetic rubber, and it appears from the evidence that when Vischer applied for his patent, that it was generally known in the rubber industry that synthetic rubber was a heat and grease resistant.

■ I have carefully considered the evidence submitted by plaintiff at the rehearing. Much of it was offered apparently to prove that defendant's patent was invalid. That question was not in issue in this action. The most that might be said for the remainder of the testimony was that it may be considered as impeachment of some of defendant's corroborative evidence. No proof was submitted that could alter the fundamental facts found by the Court as to the disclosures found in the prior art of the Carlsson and Bopp patents, the uses of pliable blow-out plugs on electrolytic condensers and steam boilers, the fusible metal blow-out plugs and the spring and weight loaded valves used in pressure cookers.

■ The application for and the issuance of the defendant's patent, No. 2,429,-149 is no evidence of patentability in the plaintiff's patent in suit. However, the issuance of this patent to defendant raises a presumption that the defendant's patent is different from plaintiff's patent in suit, which was cited by defendant in its application for its patent.

At the original trial the Court examined the defendant's safety device, a plain rubber disc, and found that no portion thereof lies within the container such as does the lower flange of plaintiff's device. That

fact remains, unaltered by the additional evidence.

The Court will file amended findings of fact and conclusions of law upon which judgment for the defendant will be re-entered.