**VISCHER PRODUCTS CO. v. NATIONAL PRESSURE COOKER CO.**

No. 9693.

United States Court of Appeals Seventh Circuit.

Nov. 17, 1949.

Warren C. Horton, Benjamin F. Wupper, Chicago, Ill., for appellant.

Edward A. Haight, Chicago, Ill., Samuel H. Maslon, Minneapolis, Minn., Francis J. Wilcox, Eau Claire, Wis., George I. Haight,

Chicago, Ill., Phillip Breitman, Eau Claire, Wis., of counsel, attorneys for defendant-appellee.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal by plaintiff from a judgment dismissing the complaint which charged defendant with infringement of claims 6, 7, 8, 9 and 10 of Patent No. 2,301,724, issued to Alfred Vischer, Jr. on November 10, 1942 on an application filed May 18, 1938 for "a pressure relief device." The case was tried by the court without a jury. Claims 8, 9 and 10 have been disclaimed, leaving only claims 6 and 7 to be considered. The issues were: (1) Whether the claims were invalid (a) for lack of invention or (b) because of anticipation, and (2) whether defendant had infringed. The court held the claims invalid and not infringed.

Vischer's device is intended to relieve the pressure in a container when a predetermined maximum pressure is exceeded. It is applicable for use with pressure cookers. Pressure cooking is a method of preparing food in a closed vessel from which the air has been expelled, and in which steam pressure is generated from a source of heat. It is an art which has been known for many years. Vischer's device disclosed a synthetic rubber plug sufficiently flexible to be inserted in a cover aperture. Its function is to seal the opening under normal cooking pressure and to blow out of the opening and relieve the pressure when a predetermined pressure is reached. The plug has flanges which engage opposite sides of the cover, and has sufficient resiliency so that it may be maintained, under ordinary cooking pressures, in the hole punched in the cover. When an excessive pressure within the cooker is reached, the plug is distorted by the pressure, portions of the plug seated around the aperture are pulled away, the plug is expelled and the excess pressure is released.

■ The important and fundamental question is whether Vischer's device advanced the art sufficiently to establish the claim of invention. In determining such a question, the first inquiry is to ascertain what it was that the inventor did which was different from what was already known and available to the public, and thus applicable to the improvement of pressure relief devices. In this connection it is well to remember that even if plaintiff has enjoyed considerable commercial success in the sale of its cooker, that fact alone does not render the patent valid. It is only where the question of patentable invention is a close one, that commercial success has weight in tipping the scales of judgment toward patentability. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, and Minnesota Min. & Mfg. Co. v. Industrial Tape Corp., 7 Cir., 168 F.2d 7, 11.

Obviously the District Court was mindful of the admonition of the Supreme Court that the lower federal courts in infringement suits ought not to dispose of such suits on the ground of non-infringement without going into the question of validity. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644. We must do likewise.

■ A long line of cases has held it to be an essential requirement for the validity of a patent that the subject matter display "invention," "more ingenuity * * * than the work of a mechanic skilled in the art." Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee, Sinclair & Carroll Co. v. Interchemical Corp., supra, 325 U.S. at page 330, 65 S.Ct. at page 1145.

On the question of patentability, the trial judge heard all of the evidence adduced by the parties and made specific and detailed findings in which he correctly set forth the controlling facts. He discussed the case at length and gave satisfactory and compelling reasons for holding that Vischer's device had not advanced the art sufficiently to justify the claim of invention. 71 F. Supp. 973 and 78 F.Supp. 513.

The District Court found inter alia that for many years prior to 1938 pressure vessels including pressure cookers subject to fluid pressure have been provided with

some form of pressure relief or safety device to relieve excessive pressures within the container. Spring or weight-loaded safety valves and fusible metal plugs were in common use in pressure cookers. In electrolytic condensers, various forms of blow-out plugs and vents sealed by a rubber cap were known and used.

The court also found that prior to Vischer a plug made of rubber or other material possessing the desired resiliency, having an annular peripheral groove with flanges engaging the opposite side of the container, was disclosed in the Carlsson Patent No. 1,014,450. The plug would maintain pressure in a container and could be made to blow out at any desired pressure.

▮ In this court plaintiff challenges the District Court's conclusions. We have listened to its arguments, studied the record, and given consideration to the points raised, but find ourselves in full accord with the trial court. We think the opinion leaves little to be said. The substance and essential part of the case fully appears in 71 F.Supp. 973, in Judge Stone's opinion, at page 976:

"Figure 1 of Carlsson's Patent, No. 1,-014,450, issued January 9, 1912, shows a plug almost identical to the plaintiff's device. The difference is that it is made of natural and not synthetic rubber. It may be made of other suitable material. It has a resilient flange which may be compressed for insertion into an opening in a receptacle, the flange expanding within the receptacle to hold the stopper in place, the construction being such that the stopper may be used repeatedly. If sufficient pressure is applied from inside the container against the Carlsson stopper, it will blow the plug out of the aperture. And that is exactly what plaintiff claims for its device in the following language:

"'My invention relates generally to devices for relieving the pressure in a container when a predetermined maximum pressure is exceeded. It is an improved means for relieving the fluid pressure in a container, and an improved pressure relief or pop-off valve device.'

"Both the Carlsson and Vischer plugs will function as a fluid pressure relief device or as blow-out plugs. That should be obvious to any mechanic skilled in the art."

Thus it is clear that Vischer's device involved no more than a use or utilization of the existing fund of public knowledge. A new use of an old thing lacks the very essence of an invention. Dow Chemical Co. v. Halliburton Co., 324 U.S. 320, 327, 65 S.Ct. 647, 89 L.Ed. 973; General Electric Co v. Jewel Incandescent Lamp Co., 326 U.S. 242, 248, 66 S.Ct. 81, 90 L.Ed. 43; and Old Town Ribbon & Carbon Co. v. Columbia Ribbon & Carbon Mfg. Co., 2 Cir., 159 F.2d 379.

▮ Infringement. One of the grounds upon which the trial judge based his finding that the claims were not infringed, was that defendant's devices differ from those disclosed by Vischer. In considering whether there was infringement, the claims must be read in the light of the invention disclosed, and we must apply the well-established rule that whatever the language of the claims may be, they cannot cover more than the patentee's invention; that is to say, the claims cannot be given a construction broader than the actual teachings of the patent as shown by the specifications and drawings.

With these principles in mind we examine the specification and learn that there are no limitations as to the form of the plug. The plug, however, shall have some means to hold it in position so that the peripheral edge of the inner surface engages the inner surface of the cover so as to form an abutment and an initial seal. Claim 6 discloses that the only structural limitation in the claim is a flange engaging part of the container around the aperture, and claim 7 states that "the peripheral portion thereof (the plug) engaging and held against said seating surface by a force derived from the fluid pressure within the container * * *." The devices used by defendant are quite different. The first accused structure has no flange, and no portion of the plug lies within the container which engages the inner surface of the cover, and the second accused structure has no portion of the plug which lies within

the container, and the plug itself has no means to hold it in position as in Vischer's, and it does not provide an initial seal. Neither has it a flange, nor is the peripheral portion of the plug sufficiently elastic to yield at the predetermined pressure, but the entire disc is deformed in order to yield. It follows that the court correctly found the claims in suit were not infringed.

Affirmed.