ALLEN et al. v. BARR et al.

No. 8245.

United States District Court
E. D. Michigan, S. D.
Oct. 19, 1950.

Edward M. Apple, Thomas S. Donnelly, Detroit, Mich., for plaintiffs.

E. J. Balluff, Harry E. Warning, Detroit, Mich., for defendants.

KOSCINSKI, District Judge.

Plaintiffs charge infringement of Patent No. 2,467,001, granted April 12, 1949, to plaintiff Perry E. Allen, for "Improvement of Scuff Pads for Automobile Fender," on his application dated July 5, 1947: they also charge defendants with infringement of their "No-Mar" trade-mark, and unfair competition relating to the patented device and trade-mark use, and demand injunction, accounting, and damages. Defendants deny validity or infringement of patent and trade-mark, they deny unfair competition, and, by counterclaim seek injunction and judgment for damages against plaintiffs for allegedly unwarranted and vexatious litigation.

All parties hereto are residents or citizens of the State of Michigan.

Jurisdiction of the issues of validity and infringement of the patent is based upon the Patent Laws of the United States and 28 U.S.C.A. § 1338. Jurisdictional issues of unfair competition, validity and infringement of trade-mark, and defendant's counterclaim are discussed and determined in the second part of this opinion.

## I. Patent

Plaintiff Allen organized and is president and general manager of both plaintiff corporations, one of which is engaged in the manufacture of scuff pads, referred to as "door guards" throughout the trial, and the other in selling the manufactured product. Since the filing of this suit there was a merger of the two plaintiff corporations. Allen is the sole stockholder in the merged corporation. Prior to and since the issuance of the patent to him, Allen has engaged in the manufacture and sale of a product described as the "No-Mar Gasoline Door Guard." The purpose of the manufactured device is to serve as a protective shield to prevent the scratching or marring of an automobile rear fender area, immediately below the gasoline door opening, by the metal portion or nozzle of the gasoline supply hose, when filling the automobile tank with gasoline. This manufactured article, however, is not the flat, plate-like scuff pad described in the specifications and patent claims, but is a device with a crown-body.

Defendant Budd Barr, a manufacturer in his own right, purchased several thousand of the crown-body scuff pads from

one Herman Hill, who had a license from Allen to manufacture and sell the device, and proceeded to sell them to the public in his "Bar-Mar" cardboard cartons imitative of the cartons in which Allen was selling his product. Early in 1949 he manufactured these scuff pads in his own plant and sold them at first in the "Bar-Mar" carton, and later in a "Budd Barr Gas Door Guard" carton. Allen's carton was labeled "No-Mar Gasoline Door Guard," while defendant Budd Barr's carton contained the words "Bar-Mar Gasoline Door Guard." Except for the color and the names of the respective companies on the cartons, defendant Barr's carton was a complete imitation of Allen's carton.

Allen concedes defendant Barr's right to sell the scuff pads or door guards purchased from Hill, but challenges his right to sell the device in the Bar-Mar Cartons, claiming such sales to be unfair competition.

The claims of the patent are:

"Claim 1. An article of manufacture adapted to serve as a protective shield for an automobile fender adjacent an opening in said fender, comprising a plate like member having a cut-out portion adapted to align with the cut-out portion of said fender, there being depressed webs on said plate arranged to contact depressed portions formed on said fender to assist in holding said plate in position."

"Claim 2. An article of manufacture adapted to serve as a protective shield for an automobile fender adjacent an opening in said fender, comprising a plate like member having a cut-out portion adapted to align with the cut-out portion of said fender, there being at least one depressed web on said plate adapted to cooperate with a depressed portion formed on said fender, and apertures in said web adapted to accommodate fastening means.".

The only difference between Claims 1 and 2 is that Claim 2 includes "apertures in said web adapted to accommodate fastening means," while in Claim 1 nothing is said about the apertures, which are simply two small holes through which screws are inserted to be fastened to the depressed portions or flanges of the gasoline door opening in the fender. Neither of the two claims of the patent disclose the invention as relating to an opening for a gasoline door in a fender, but relate only to a "cut-out portion of said fender."

The patent is not a primary one. Conventional types of automobiles have an opening in the rear fender for supplying gasoline to the gas tank. In some types of automobiles the filler cap is positioned below the level of the fender, and is made accessible through the opening formed in the fender, which opening is closed by a hinged plate, or door, when not used. Although the patent is for an improvement in scuff pads for automobile fenders, the patented device is advertised and commonly referred to as a gasoline door guard.

The patent specifications state that "the invention resides in the provision of a protective plate which may be made of metal or gasoline resistant synthetic plastic material, or any other suitable material."

The file wrapper of the Patent Office discloses that the patentee originally submitted six drawings or figures embodying his invention and illustrating the embodiment as a "plate like" device. Approximately 18 months later, he filed amended Claims and drawings 7, 8 and 9 embodying a "crown body" device. In addition, his proposed amendments to the original application would include an "all metal embodiment of the protective member," and capable of providing "a perfect contact for grounding any static electricity which may be stored in the gasoline filler hose." All three amendments to the original application and specifications were rejected by the Patent Office as having no basis in the application as originally filed and being a departure therefrom. The proposed amendments were cancelled and withdrawn by Allen.

The file wrapper shows the following patents to have been cited against the device on the issue of invention:

| Number | Name | Date |
|---|---|---|
| 581,977 | Clingman | May 4, 1897 |
| 1,480,274 | LaBarre | Jan. 8, 1924 |
| 2,282,443 | Wilson | May 12, 1942 |
| 2,368,200 | Cavanagh | Jan. 30, 1945 |
| 2,417,324 | Rivard et al. | Mar. 11, 1947 |

All relate to protective pads or shields, some on automobile fenders. The patentee eventually, by direction of the Patent Office, cancelled all claims except those specifically reading on Fig. 6 of the patent which he elected to rely upon for his patent, disclosing a flat or plate-like protecting shield affixed to the fender in a position beneath the gasoline door opening. No generic claims were allowed.

In rejecting patentee's amended claim providing for a device having a "crowned body", the Patent Office reasoned that this was new matter and was not disclosed in either the drawings, description or claims as originally filed, and that, furthermore, the proposed amended claim was not readable on the elected species represented by Fig. 6 of the drawings. There is little, if any, difference between Allen's proposed and cancelled amended claim providing for a crown-body, and defendant Barr's product of a similar device.

■ The patentee cannot urge here a construction for his claims broader than given him by the Patent Office. Were this Court now to hold that Claims 1 and 2 of the patent were infringed by defendant's device, it would, in effect, be giving Allen a claim of the scope of his rejected Claim 9 which the Patent Office ruled Allen not entitled to, as he did not disclose it in his original application.

"It is axiomatic in the patent law that infringement depends, not upon what is manufactured or sold by the patentee, but upon what he has patented." Walker on Patents, Deller's Edition, Vol. 3, p. 1681.

At the trial, plaintiffs' counsel argued that the invention resides in the depressed portions of the device. He said, "The invention is so constructed, this door guard, that it has these flanges, an inwardly projecting one and one at right-angles to it to correspond with the flanges on the fenders, so that there is intimate contact at both the end flanges and along the base." (Transcript p. 238.) The device, then, consists of a scuff pad made of any kind of material, with a depressed portion, web or flange to contact the counterpart of identically formed depressed portions, webs

or flanges, and fastening means of two small screws, nuts and rubber washers, which were already furnished by the automobile manufacturer to hold the small door in place.

Since scuff pads, either for automobile fenders, or as protective shields otherwise used, as pointed out by the Patent Office, are not new, it is obvious that the two claims of the patent were allowed solely on the basis of the depressed webs or flanges on the protective device to assist in holding it in position when aligned and fastened to the already existing webs or flanges in the cut-out portion of the fender gasoline door opening. The issue to be determined here, therefore, is whether invention resides in this portion of the device. Obviously no claim is made that the screw, the nut, or the washer, or any combination of the three is novel.

■ One of the first models embodying his device made by Allen before the patent was issued to him was a flat structure to be laid flush against the fender and attached thereto at the flanges. During the prosecution of his application in the Patent Office, Allen filed the amended No. 9 Claim which provided for a crown-like structure. This was the structure that he was then and is now manufacturing and selling. His cancellation of that claim, after the Patent Office pointed out that it was a departure from his original claim, must be considered as abandonment and amounts to a disclaimer of the claims covering a crown body structure, and cannot be read on either of the granted Claims 1 or 2 of the patent.

■ "Where the patentee in the course of his application in the patent office has, by amendment, cancelled or surrendered claims, those which are allowed are to be read in the light of those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed." Schriber-Schroth Co. v. Cleveland Trust Company, 311 U.S. 211, 218, 61 S.Ct. 235, 238, 85 L.Ed. 132, "The patentee may not, by resort to the doctrine of equivalents, give an allowed claim a scope which it might have had without the amendments,

the cancellation of which amounts to a disclaimer. * * * True, the rule is most frequently invoked when the original and cancelled claim is broader than that allowed, but the rule and the reason for it are the same if the cancelled or rejected claim be narrower." Id., 311 U.S. at page 221, 61 S.Ct. at page 240. This is especially so where the patent is of narrow construction, as where it is claimed to be an improvement over prior art as the patent here in issue.

■ Both claims of the patent describe the structure as a "plate like member." In the specifications it is described as a "protective plate." Fig. 6 of the patent drawing which was used as the basis for the patent grant discloses a flat or plate like structure and not a crown like device. Patentee thereby recognized that the crown body structure, which he now claims to be infringed by defendant's device, could not be read upon his patented claims of a "plate like member." The action of the Patent Office in refusing to accept the amended claim providing for a "crown body member" further demonstrates the interpretation made of plaintiffs' requested amended claim. The Patent Office file wrapper discloses that the claims of his patent are specific and not generic and he is limited to the grant which he obtained from the Patent Office. "When terms of grant are clear and distinct, patentee is bound by plain meaning thereof, and can claim nothing beyond it." Martin et al. v. H. C. Miller Co., 7 Cir., 63 F.2d 5.

■ The scope of a patent claim is determined not only in the language of the claim itself, but also in the light of the specifications and drawings. In commenting on the Schriber-Schroth Co. v. Cleveland Trust Co., decision, supra, Judge Simons, in Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541, 545, observed: "A somewhat broader principle also applicable here has never, so far as we know, been stated with more clarity and precision than by the late Judge Denison speaking for this court in D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240, 241, ' * * * where the claim defines an element in terms of

its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency.' This principle we have implied in many cases, including R. M. Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 548; Firestone Tire & Rubber Co. v. United States Rubber Co., supra, 6 Cir., 79 F.2d [948] at page 955; United Shoe Machinery Corp. v. O'Donnell Rubber Products Co., 6 Cir., 84 F.2d 383, 386; Shearer v. Atlas Radio Co., 6 Cir., 94 F.2d 304, 306; A. O. Smith Corporation v. Lincoln Electric Co., 6 Cir., 82 F.2d 226, 229." In the Schriber case, the court held that the cancellation of the claim amounted to a disclaimer. "When claims are rejected and withdrawn while invention is pending in the Patent Office the patentee is estopped to contend that the allowed claims should be given the same breadth and interpretation as the abandoned claims." Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550, 563. See also Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736. Viewed in that light, defendant's crowned body scuff pad does not infringe the flat and plate-like patented device of Allen.

The depressed or bent portions of the device here involved were previously disclosed by Bourgeon Design Patent No. 66,833 for automobile garnish panel, adapted to serve as a protective shield for an automobile door; Ross Patent No. 2,258,-812, a protective shield for a fender provided with an opening; Lyon Patent No. 2,319,936, fender scuff plate; Gross Patent No. 2,143,949, fender protector; and Cobb Patent No. 2,227,425 fender guard. In each of these there is a depressed or bent

portion of the protective shield and means to align the protective shield with the opening or cut-out portion of the fender.

The file wrapper does not disclose that any of these patents were cited of reference during the prosecution of Allen's Patent.

While a presumption of validity exists in favor of a patent, there is no such presumption as against the prior art patents not cited by the Patent Office during the prosecution of the application for the patent. Boynton v. Chicago Hardware Foundry Co., 7 Cir., 77 F.2d 799; Moran v. Protective Equipment, 7 Cir., 84 F.2d 927; Lempco Products Co. v. Timken-Detroit Axle Co., 6 Cir., 110 F.2d 307. The patents here relied upon by the defendants for prior art were not cited by the Patent Office against the application for the Allen patent.

The fact that certain references, produced upon trial of an infringement suit, were not cited in the Patent Office, does not carry with it a presumption that the references were considered by the Patent Office. Himmel Bros. Co. v. Serrick Corp., 7 Cir., 122 F.2d 740.

There is no novelty in depressing one part or portions of a plate made of metal or other substance, especially when the counterpart of this claimed invention such as the depressed portion of the fender around the scuff pad opening was already fashioned by the automobile manufacturer. No important advance in the art was made by Allen. The securing of a scuff pad to fit the gas door opening in the fender was a mere matter of expediency; it was clearly the result of obvious mechanical suggestion. The Allen Patent discloses no new function and no new result. In Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, involving the cigar lighter now in extensive use on automobile dashboards, the court said; "We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S. C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'." 314 U.S. at page 90, 62 S.Ct. at page 40; and 314 U.S. at page 92, 62 S.Ct. at page 41.: "Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art. * * * Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art * * *." To like effect, Sinclair & Carroll Co. v. Inter Chemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644, and Vischer Products Company v. National Pressure Cooker Company, 7 Cir., 178 F.2d 125.

Plaintiffs lay considerable stress on commercial success of the Allen device. However, whatever success it had was the result of a device "having a crowned body portion," which device is not readable on either of the two patent claims, since Allen's acquiescence in the rejection of the crowned body type of device under this patent amounted to a disclaimer, and bars him from claiming the benefit of it now.

While it is true that in cases where the question of patentable invention is close, commercial success may have weight in tipping the scales of judgment toward patentability, the Supreme Court has said, "Where, as here, however, invention is plainly lacking, commercial success cannot fill the void. * * * Commercial success is really a makeweight where the patentability question is close." Jungersen v. Ostby and Barton Company et al., 335 U.S. 560, 567, 69 S.Ct. 269, 272, 93 L.Ed. 235. The patentability here is not so close as to require the application of that doctrine. See also recent case of Cavu Clothes, Inc., et al. v. Squires, Inc., 6 Cir., 184 F.2d 30, on page 34.

The record in this case is barren of any testimony, other than Allen's, that any problem existed which was awaiting solution by someone.

Allen's patent No. 2,467,001 for improvement in scuff pads for automobile fenders does not involve invention and is not patentable.

## II. Trade-Mark

Allen's business relations with Hill, his licensee who sold plaintiffs' product to defendant Barr, resulted eventually in a lawsuit filed by him in the Circuit Court for Wayne County, which was settled by the parties on April 26, 1948, two weeks after the patent issued. Paragraph 5 of the stipulation and agreement of settlement provides in part: "It is agreed that such persons or firms to whom the defendant Hill has sold such number of gasoline door guards shall have the right to resell those pieces, and no others, and this Agreement shall in no way be construed as a license on the U. S. Letters Patent No. 2,467,001 dated April 12, 1949, or other patents pending in the name of Perry E. Allen, or any of the plaintiffs."

Up to that time, Hill sold a total of 104,142 door guards, including those sold to defendant Budd Barr, who was a sales outlet for Hill. At the time the stipulation was entered into between Allen and Hill, Barr had on hand approximately 14,000 door guards and cartons which were purchased from Hill. Under the settlement agreement, Budd Barr had the unquestioned right to sell such door guards without incurring any liability to plaintiffs, who, however, contend that Barr is guilty of unfair competition in selling these scuff pads or door guards in plaintiffs' "No-Mar" cartons, and later in the "Bar-Mar" containers.

Allen sold the first door guards in cartons marked "No-Mar Gasoline Door Guard" September 1, 1947, and the first of such deliveries was made in February, 1948. Plaintiffs claim to have manufactured and sold a total of between 400,000 and 500,000 door guards since that time, including those sold by Hill. They also claim to have expended the sum of $35,000.00 for advertising their product in the "No-Mar" cartons. The advertising was accomplished by circulars distributed to the trade generally throughout the country, as well as advertising in newspapers and magazines of national circulation. Plaintiffs were selling their product to some automobile manufacturing companies and also to distributors of automobile supplies throughout the United States. In an accessory catalogue put out by the automobile manufacturers and distributed to their dealers, the No-Mar product was illustrated and appropriately described.

Following several months' sales of their product by plaintiffs in the "No-Mar" cartons, the defendant Budd Barr commenced selling door guards in a carton of the same size and shape, bearing the words "Bar-Mar Gasoline Door Guard," containing the identical words and pictorial illustrations used on the plaintiffs' carton, even to the extent of having an arrow pointing to one of the pictorial parts in the same manner as it appeared on plaintiffs' carton.

At the time Hill sold the door guards to Budd Barr for re-sale, he cautioned Barr not to sell them in "No-Mar" cartons or under the "No-Mar" trade-mark, and he later aided Barr in preparing the "Bar-Mar" carton. Notices of infringements were sent by plaintiffs to the defendants. Barr testified that he discontinued selling the accused cartons in April 1949, but there was evidence that he made two sales of a total of 100 door guards in July and September of 1949.

Defendant Herman D. Weiss was defendant Budd Barr's salesman and representative in the states of Michigan, Ohio and Indiana, and was paid a commission on the sales made by him. The defendant Grand River Plating and Manufacturing Company performed the plating work on the door guards manufactured by defendant Budd Barr, but had discontinued that work prior to the trial of this case.

The trade-mark "No-Mar" is a combination of two words describing the function, qualities or characteristics of the product, and so is in the category of descriptive trade-marks which ordinarily are not subject to exclusive appropriation as a trade-mark or trade name. It is only when such descriptive trade-mark, through long and exclusive use, has acquired a distinct meaning as being associated and identified with the manufacturer or distributor using it, that it may acquire a secondary meaning and be subject to exclusive appropriation No adequate proof was submitted on that issue.

Several manufacturers had previously used the words "No-Mar," either as a trademark or trade name, in manufacturing, selling or distributing devices having similar uses, functions and characteristics, or for like or similar purposes, prior to the first use of that mark by plaintiffs. These companies are The Bassick Co., Austin St., Bridgeport, Connecticut, "No-Mar Furniture Rests;" Rubbercraft Corp. of California, Ltd., Los Angeles, California, "No Mar Heel Rest & Floor Protectors"; American Textile Products Co., Cleveland, Ohio, "No Mar Products"; Geo. W. Funk & Co., Inc., Elgin, Illinois, "No Mar Table Mats"; John W. Masury & Son, Inc., Baltimore, Md, "No Mar Varnishes, Stains & Enamels"; and Keel & Company, Philadelphia, Pennsylvania, "No Mar Vulcanizing Mold Side Plates."

■ There being neither diversity of citizenship nor a registered trade-mark under any Act of Congress present here, this court is without jurisdiction to adjudicate the validity or infringement of plaintiffs' trade-mark. In Magic Foam Sales Corp. v. Mystic Foam Corp., D.C.1947, 73 F.Supp. 424, affirmed 6 Cir., 167 F.2d 88, the court held that infringement claims based on an unregistered common-law trade-mark between citizens of the same state do not present a substantial federal question, and that, therefore, the suit was not within the purview of the doctrine of Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

### III. Jurisdiction in Patent or Trade-Mark Unfair Competition Cases

While jurisdiction of the court is ordinarily determined from the pleadings of the case, the jurisdictional issue of the unfair competition branch of this case was deferred here until the taking of testimony was completed, and seemingly conflicting decisions studied in the light of the facts developed during the trial.

Since the enactment of Revised Title 28 U.S.C.A. § 1338(b), this court has jurisdiction of an unfair competition issue only when it is joined with a "substantial and related" claim under the copyright, patent, or trade-mark laws. The cases relied upon by plaintiffs were decided prior to its enactment.

Plaintiffs contend that the Magic Foam Sales Corp. case, supra, is inapplicable here since no issue of validity or infringement of a patent was present. But that issue was present in Musher Foundation, Inc., v. Alba Trading Co., Inc., 2 Cir., 127 F.2d 9. That case involved a patent infringement and unfair competition based on infringement of plaintiff's common-law trade-mark, and the Court of Appeals there held that the district court lacked jurisdiction of the unfair competition charge, as there was no substantial identity between proof showing patent infringement and that showing infringement of a common-law trade-mark. A similar situation prevails here.

It is plaintiffs' claim, however, that this court, having jurisdiction of the patent branch of the case, should retain jurisdiction of the unfair competition branch of the case, regardless whether the court adjudicates the patent to be valid or invalid, relying on N. S. W. Co. v. Wholesale Lumber & Millwork, 6 Cir., 123 F.2d 38. However, in that case and other cases cited by plaintiffs, as well as in Armstrong Paint & Varnish Works Co. v. Nu-Enamel Corp., 305 U. S. 315, 59 S.Ct. 191, 83 L.Ed. 195, registered trade-marks were involved, as well as the misuse of the patented product, while here the trade-mark is unregistered and the specific patented device is not involved.

In the recent case of Kaplan v. Helenhart Novelty Corp., 2 Cir., 182 F.2d 311, 312, which was a suit for declaratory judgment to have patent held invalid, or not infringed, if valid; to have an unregistered trade-mark of the defendants held invalid, or, if valid, not infringed; for accounting of profits and damages due to the misuse of both the patent and the trade-mark; and for a temporary and permanent injunction to prevent further misuses of both the patent and the trade-mark, it was decided that the trial court had jurisdiction of that part of the suit which put in issue the validity and infringement of the patent. In denying the District Court's jurisdiction of the trade-mark and unfair competition branch of the

litigation, the court said: "But since the trade-mark is unregistered and there is no diversity jurisdiction, the cause of action based on its alleged infringement or on its misuse is not by itself within the jurisdiction of a federal court. Nor did its joinder with the cause of action on the patent suffice to give the district court jurisdiction within Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, or within § 1338(b) of the Judicial Code, 28 U.S.C.A. § 1338(b), which reflects the so-called Hurn v. Oursler doctrine. This is so because rights in issue under the patent and those under the trade-mark are not dependent upon substantially the same facts and those under the trade-mark are not so ancillary to the patent jurisdiction of the court as to be but an incident of that. Armstrong Paint & Varnish Works Co. v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195; Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L. Ed. 1572; Derman v. Stor-Aid, Inc., 2 Cir., 141 F.2d 580, 584, certiorari dismissed 323 U.S. 805, 65 S.Ct. 25, 89 L.Ed. 643. Even though the trade-mark may have been applied to some of the articles claimed to be covered by the patent, the different rights still rest upon the different facts essential to their establishment."

An interesting discussion of Federal jurisdiction in patent, trade-mark and copyright infringement-unfair competition cases is found in 12 A.L.R.2d 698. The cases there discussed relate to the state of the law prior to the enactment of the Revised Section 1338(b). The annotation referred to concludes with this paragraph: "The problem of whether a Federal court may deal with the question of unfair competition when Federal jurisdiction is based upon the claim of copyright, patent, or trade-mark infringement, regardless of ultimate determination of the federal question, is now of academic interest," as a result of the enactment of Section 1338(b).

The unfair competition here charged does not meet the conditions of "a substantial and related claim under the copyright, patent, or trade-mark laws." The plaintiffs claimed rights in issue here under the patent

and those under the trade-mark are not dependent upon substantially the same facts and those under the trade-mark are not so ancillary to the patent jurisdiction of the court as to be but an incident of that, as held by the court in Kaplan v. Helenhart Novelty Corp., supra. In French Renovating Co. v. Ray Renovating Co. et al., 6 Cir., 170 F.2d 945, the court held that the district court does not acquire jurisdiction of an action which is non-federal in its nature merely because it is joined in the complaint with a cause of action which is within its jurisdiction; citing the Hurn v. Oursler decision, supra, before the court in such a case may accept jurisdiction of such non-federal cause of action, it must appear that both federal and non-federal causes rest upon substantially identical facts.

Also, this court having found that there is no infringement of the patent, and that the patent itself is invalid, and that the unfair competition claimed by plaintiffs is in respect to scuff pads or door guards not covered by the patent, such claim of unfair competition sets up a separate and non-federal cause of action of which this court has no jurisdiction. Lewis v. Vendome Bags, Inc., 2 Cir., 108 F.2d 16.

## IV. Counter-Claim

Defendant Budd Barr filed a counter-claim against the plaintiffs charging a conspiracy and plan to harass and annoy him and to disturb his normal business relations with his customers, and to cause him unwarranted expense and trouble by commencing a vexatious and unfounded action against him in March 1949 in this court, prior to the issuance of the Allen Patent No. 2,467,001, and obtaining a temporary restraining order from another judge of this court enjoining the defendant Budd Barr from manufacturing or selling gasoline door guards; that such action was dismissed and the restraining order dissolved on April 6, 1949 by the judge who issued the injunction for lack of jurisdiction. The counter-claim further alleges already described settlement of the law suit in the Wayne Circuit Court and the stipulation entered into, and threats made to defend-

ants' customers, salesmen and vendors in an effort to intimidate such parties from doing business with defendant Budd Barr, thereby causing financial losses to the defendant Budd Barr. Defendant Budd Barr seeks injunction restraining plaintiffs from continuing such alleged acts, as well as damages for the financial losses suffered.

No basis for federal jurisdiction of defendant's counter-claim has been suggested ·by counsel. There is no diversity of citizenship and no federal question involved, and the court without jurisdiction of the counter-claim. Derman v. Stor-Aid, Inc., 7 Cir., 141 F.2d 580.

Judgment is being filed and entered simultaneously herewith.