**AMERICAN FORESIGHT OF PHILA-DELPHIA, INC., et al.**

v.

**FINE ARTS STERLING SILVER, INC., et al.**

**Civ. A. No. 39988.**

United States District Court
E. D. Pennsylvania.
Jan. 4, 1967.

Meltzer & Schiffrin, Seidel & Gonda, Philadelphia, Pa., for plaintiffs.

Frederick J. Olsson, Bellwoar, Rich & Mankas, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

## OPINION

The instant matter is before this Court on a motion by the defendants to dismiss three counts of the plaintiffs' complaint for lack of subject matter jurisdiction. The plaintiffs have brought suit alleging copyright infringement and have joined with their complaint three counts alleging unfair competition. Plaintiffs rely on 28 U.S.C. § 1338(b) to sustain the unfair competition claims.

*The defendants' motion poses the question whether the federal and non-federal claims are "related" within the meaning of § 1338(b) so that the jurisdiction of this Court can be invoked over the unfair competition claims.* On September 30, 1966, I issued an order sustaining counts two through four of the complaint and indicated that an opinion would follow. *What follows are the reasons which underlie my decision.*

## STATEMENT OF FACTS

The plaintiffs are distributors of cookware and cooking utensils. They are engaged in the business of house-to-house, or direct sale, of their products. The plaintiffs allege that the corporate defendants unlawfully infringed two of their copyrighted works "Foresight, Inc." and "American Maid, Inc." These books are used by plaintiffs' sales personnel as visual aids in selling their cookware. Books of this type are commonly referred to in the trade as "sales presen-

tation books". As I understand the sales methods involved, the pages of the books are arranged in the form of flip charts, which contain graphic and/or text material. The pages are turned sequentially by the salesman so that they serve as an aid to the logical progression of the salesman's "talk". The plaintiffs allege that the defendants have infringed their copyrights by making a series of display cards and other writings bound together in a loose-leaf book and by "preparing" a Sales Manual and "Society Sales Presentation", and other sales material. The corporate defendant is alleged to have "published" these works by showing them to third-parties, presumably during sales talks. The plaintiffs allege also that these writings are substantially the same as their copyrighted material.

In the second count the plaintiffs have alleged that their copyrighted works have acquired a "secondary meaning" and are identified by the public with their products. Thus, they allege that by publishing, distributing, displaying and otherwise marketing a series of display cards and other writings bound together in a loose-leaf "volume" copied substantially from plaintiffs' works; the defendants (corporate and individually) have caused them irreparable injury.

In count three the plaintiffs allege that they have created, over a period of years, a "valuable and unique training, promotional, solicitation, merchandising, sales and reporting program." In addition, they allege that they have developed "forms, techniques, manuals and devices" as a means of providing training for their personnel. These "trade secrets" were confidentially imparted to the individual employees now employed by the defendants, and who themselves are defendants in this action. Thus, count three clearly states a claim for unfair competition.

Finally, in count four the corporate defendants are alleged to have conspired with the individual defendants to "systematically" induce employees or agents of the plaintiffs to leave their (plaintiffs') employ, copy and divulge trade

secrets and customer lists, etc., for the purpose of injuring plaintiffs' business. As does count three, the fourth count states a claim for unfair competition and unfair trade practices. The plaintiffs seek relief in the form of an injunction and damages.

If the challenged sections of the plaintiffs' complaint are to be sustained, this result must follow because of the doctrine of pendent jurisdiction as incorporated in § 1338(b). What follows is an analysis of that doctrine, particularly bearing in mind its recent development, and also the intent of Congress in enacting § 1338(b)—to the extent that its intent is discernible and relevant.

## PENDENT JURISDICTION AND HURN v. OURSLER

The doctrine of "pendent jurisdiction" received major recognition in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). In that case the petitioners brought suit to enjoin the production of a play which they contended infringed the copyrighted and uncopyrighted versions of another play to which they held production rights. Jurisdiction was based on the copyright laws as to the copyrighted version and state laws of unfair competition as to the uncopyrighted play. The trial court considering the claim of infringement, on the merits, found that there had been no infringement of the copyright laws of the United States. It decided also that, in view of its finding of non-infringement, it was without jurisdiction to entertain the claim based on unfair competition, based as it was on state law. The Supreme Court held that where two grounds, one federal, the other non-federal, are urged in support of the same cause of action, a federal court has jurisdiction to adjudicate both grounds—providing, of course, that the federal ground is substantial. In deciding this point the Court made this distinction:

> But the rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct non-federal cause of action because it is

joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. *In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the non-federal ground; in the latter it may not do so upon the nonfederal cause of action.* (53 S.Ct. at p. 589; emphasis added.)

Thus the rationale of Hurn v. Oursler, supra, appeared to preclude the complete adjudication of cases, such as the one now before us, which present not merely two grounds in support of the same cause of action, but more than one cause of action—or claim for relief. The prevailing interpretation seemed to be that adopted by the Court of Appeals for the Second Circuit in Musher Foundation v. Alba Trading Co., 127 F.2d 9 (2 Cir. 1942). In that case, which involved a claim of trade mark infringement combined with one of unfair competition, the Court held that a federal court had no jurisdiction to adjudicate the state law claim. It noted that it saw:

> * * * little, if any, resemblance between the situation in which the court upheld jurisdiction over the non-federal count in Armstrong Paint & Varnish Works v. Nu-Enamel Corp. [305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195], supra, and that in the case at bar. The proof of infringement of the patents in suit will depend on complainant's success in establishing that the defendant employed the process of infusing oil or has manufactured, used or sold the infused product, and not that it has advertised the product as "infused" or placed it in containers bearing that descriptive mark. Indeed, the defendant might infringe the

patents without the use of containers bearing the name "infused" and without employing the words "infused" or "infusion" in its advertising or sales talk. It might also make representations that would render it guilty of unfair competition without selling oil manufactured under complainant's process. *The only cases where there has been joinder of a federal with a non-federal count and jurisdiction over the latter count has been sustained have been cases of joinder of suits on registered copyrights with suits for unfair competition based on common law copyrights; suits on registered trademarks with suits for unfair competition based on unregistered trade-marks and suits on design patents with suits for unfair competition based on products made in accordance with the patented designs.* (127 F.2d 9, at p. 10; emphasis added.)

Thus, the post *Hurn* cases tended to view the doctrine with a certain degree of severity.[1] In 1948, Congress codified the rule of Hurn v. Oursler in the Judiciary Act. This, however, did not definitively settle the problems raised in that case. Therefore, it is necessary to examine the interpretation which the Court of Appeals for the Third Circuit has given to Section 1338(b).

## THE INTERPRETATION OF § 1338(b)

Section 1338(b) reads as follows:

The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and *related* claim under the copyright, patent or trademark laws. (Emphasis added.)

Clearly then by enacting § 1338(b) Congress intended to accept Hurn v. Oursler, supra, and possibly to extend it. The reviser's notes to Title 28 observed that:

Subsection (b) [1338] is added and is intended to avoid 'piecemeal' litigation to enforce common-law and statutory copyright, patent, and trade-mark rights by specifically permitting such enforcement in a single civil action in the district court. While this is the rule under Federal decisions, this section would enact it as statutory authority. The problem is discussed at length in Hurn v. Oursler, 1933, 53 S. Ct. 586, 289 U.S. 238, 77 L.Ed. 1148, and in Musher Foundation v. Alba Trading Co., C.C.A.1942, 127 F.2d 9, majority and dissenting opinions. 80th Congress House Report No. 308, [1947].

In Hook v. Hook & Ackerman, Inc., 233 F.2d 180 (3 Cir.1956), the Court of Appeals for the Third Circuit held that the reported decisions were clear that a dis-

---

1. In the same case Judge Charles Clark dissented. Judge Clark was of the opinion that the Court was "shying away from the natural implications" of Hurn v. Oursler. He noted that: "[t]he conceptual yardstick of that doctrine is the 'cause of action'; a single cause of action giving rise to both federal and non-federal rights may be completely adjudicated in the federal courts, where it must be anyhow because of federal rights. It seems to me clear, however, that the rule is wholly illusory unless we grant a reasonable and practical content to the yardstick and require for our unitary cause only a substantial amount of overlapping testimony, rather than complete identity of the facts. That is the obviously desirable rule from the standpoint of procedural economy; furthermore, it is sound analytically, for the cause or ground of the action is, broadly, the unfair appropriation by defendant of plaintiff's property, protected by either state law or federal law or both, in a trade-mark or a book or an invention. A converse view, requiring identity of facts, practically excludes the possibility of a single cause, since state and federal rights are hardly ever—if ever—complete equivalents, and differing rights depend on differing facts. At any rate, federal rights of trade-mark, copyright, or unfair competition are not exact counterparts of the non-federal right against unfair competition, and the facts to support the former are not identical with those which support the latter."

Judge Clark's views did not prevail at the time. However, in United Mine Workers of America v. Gibbs, infra, the U. S. Supreme Court gave every indication that it had substantially accepted Judge Clark's views; and it is those views which I accept today.

trict court may not assume jurisdiction of a state claim merely because it is joined in the same complaint with a federal claim. In so doing it upheld the trial judge's dismissal of a claim of unfair competition because the facts were "in no way related to the facts upon which the infringement suit was based."

The Court extended its interpretation of § 1338 somewhat, in O'Brien v. Westinghouse Electric Corporation, 293 F.2d 1 (3 Cir.1961) where it permitted the joinder of an unfair competition claim in which the alleged unfair practices pre-dated the complained of infringement. In Family Circle, Inc. v. Family Circle Associates, Inc., 332 F.2d 534 (3 Cir.1964), the Court of Appeals upheld the joinder of a claim of unfair competition with a suit for trademark infringement; however, the facts there were very similar to the "pure" pendent jurisdiction problem in Hurn v. Oursler, supra.

The most recent treatment of the problem in this Circuit, was that given by Judge Marsh in The Peterson System, Inc. v. Masters System of Correlated Handwriting, 224 F.Supp. 957 (D.C., 1963), Peterson System, Inc. v. Morgan, 228 F.Supp. 744 (1964) (W.D.Pa.). In Peterson, the Court refused to permit the joinder of an unfair competition claim where the plaintiff alleged breach of contract and confidential relation, misuse of trade secrets and tortious solicitation of customers. Judge Marsh felt himself bound by previous rulings of the Court of Appeals and by his own interpretation of the reviser's notes to § 1338(b), supra. Thus, 228 F.Supp. at p. 745, he said:

It may be true that evidence of the alleged false representations concerning the origin of goods and services sold to establish plaintiff's claim under the Lanham Act may also be adduced in connection with the non-federal claims, *but such evidence is common to "separate and distinct causes of action" only one of which—the Lanham Act violation—is federal in character. Simply because some facts relevant to both the federal and non-federal claims occurred during the same period of time and are, as plaintiff argues, 'interwoven', does not per se operate to confer jurisdiction.* Joinder of separate and distinct causes of action, only one of which is federal in character, is proscribed by Hurn v. Oursler * * * and such actions are not relevant in the statutory sense. (228 F.Supp. at pp. 745–746.) (Emphasis added.)

Clearly, if the present complaint is governed by the doctrine expressed in *Peterson*—which, I might add, accurately reflected the state of the law, at least at that time—then at least two of the four counts would have to be dismissed. However, since *Peterson,* the Supreme Court decided United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which it reinterpreted the rule of Hurn v. Oursler, supra. It is in light of this new understanding that I must rule on the motion now before this Court.

## THE NEW UNDERSTANDING

■ The *Gibbs* case involved an action brought against a union for secondary boycott, and for interference with contracts of employment and haulage. The respondent was awarded compensatory and punitive damages for alleged violations of § 303 of the Labor-Management Relations Act of 1947, and the common law of Tennessee. The Court held that the trial judge rightly upheld the state claims under the pendent jurisdiction doctrine. It held that with the adoption of the Federal Rules of Civil Procedure and the unified form of action, much of the uncertainty over the meaning of "cause of action" has abated. The Court noted also that:

The phrase remained as the keystone of the Hurn test, however, and, as commentators have noted, has been the source of considerable confusion. Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties, joinder of claims, parties and remedies are strongly encouraged. *Yet because the Hurn question involves issues of jurisdiction as*

*well as convenience, there has been some tendency to limit its application to cases in which the state and federal claims are, as in Hurn, 'little more than the equivalent of different epithets to characterize the same group of circumstances.'* (86 S.Ct. at p. 1138). (Emphasis added.)

What follows is the heart of the proposition:

This limited approach is unnecessarily grudging. Pendente jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority' * * * *and the relationship between that claim and the state claims made in the complaint permits the conclusion that the entire action before the court comprises but one constitutional 'case'.* The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. * * *

* * * *The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard for their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.* (Ibid. at p. 1138). (Emphasis added.)

Finally, the Court noted that the power need not be exercised in every case in which it is found to exist. It then enunciated the standards which were to be applied:

* * * It has consistently been recognized that pendent jurisdiction is a

doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them * * *. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law. * * * Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. (Ibid. at page 1139).

Thus in *Gibbs* the Court abandoned the limitations placed on the scope of the pendent jurisdiction doctrine by Hurn v. Oursler, supra. There is, however, one point which must be considered before we reach the question of the joinder of the three additional counts.[2] The question is that of Congressional intent as it pertains to Section 1338(b).

■ As recorded earlier, Congress, in enacting § 1338(b), intended, at the very least, to codify the rule of Hurn v. Oursler, supra. I must now decide whether Congress by specifically adopting that rule as to patents, trade marks and copyrights intended to preclude an extension of the pendent jurisdiction doctrine as it applies to these types of cases. I conclude that it did not so intend.

There are two factors which lead to this conclusion. First, the fact that Congress specifically announced that it had intended to follow the rule of Hurn v. Oursler, and the reference made in the

2. It is highly likely that count two could have been sustained under the pre-*Gibbs* interpretation of pendent jurisdiction and § 1338(b). That count alleges that the plaintiff's product assumed a "secondary meaning" because of the copyrighted material. Thus, although the facts necessary to prove this claim would

not be identical to those necessary to prove the infringement claim, the issue of "secondary meaning" is so closely related to the proof of infringement that it would seem that it would constitute a proper joinder under the doctrine enunciated heretofore by the Court of Appeals for the Third Circuit.

reviser's notes to § 1338 to the majority and dissenting opinions in Musher Foundation v. Alba Trading Co., supra. Second, the reference, in the reviser's notes, to the desire to avoid "piecemeal" litigation.

As to the first factor, the reference to Hurn v. Oursler, supra, indicates that Congress wished to leave the way open to the Courts to deal with the jurisdictional problem as they wished. The very fact that the statute refers to "claim[s]" and not to "cause of action" indicates that Congress intended to give the Courts a certain degree of flexibility in the interpretation of the pendent jurisdiction doctrine incorporating the spirit of the Federal Rules of Civil Procedure, pertaining to joinder of claims.

The reference made by the reviser to *Musher Foundation,* supra, demonstrates that Congress was aware of the opposing viewpoints on the doctrine, and, chose to leave the resolution of this matter up to the courts.

Finally, we turn to the most significant reason for arriving at this conclusion which is the policy against "piecemeal" litigation. It is true that the reviser's notes speak of "common-law and statutory copyright, patent, and trade-mark rights" which might suggest that only the common-law equivalents of these statutory actions were to be joined, however, it is quite likely that this statement was a mere reference to the facts in Hurn v. Oursler, supra, and I so find.

## THE COMPLAINT

There are two factors which point the way to the resolution of this question.

Both are supplied by *Gibbs.* They are (a) a factual nucleus constituting one "cause of action" in the "Constitutional" sense, and (b) Judicial economy. All of the facts in this litigation arise out of a series of alleged events all or most of which occurred contemporaneously. They allegedly are the infringement of copyrights; the misleading of the public because of the "secondary meaning" attached to the plaintiffs' product (a fact most intimately related to the infringement as a matter of proof); the misuse of trade secrets and interference with contractual relationships. Conceivably, the plaintiffs might, for example, be able to prove interference with contractual relationships although failing to prove that their copyrights were infringed. Yet it is likely that plaintiffs will try to prove, that, at the very least, the copyrighted material involved so technical an understanding of how it was to be presented that these facts, if proved, would show an interference with contractual relationships, disclosure of trade secrets and unfair competition because the use of the display books had acquired a "secondary meaning."

■■ The example given above indicates that the facts of the transactions alleged by the plaintiffs are likely to be so interwoven that a joinder of claims would serve the convenience of the parties, and, judicial economy.[3]

■ I find that the claims have a "factual nucleus" and can be sustained under 28 U.S.C. 1338(b) and therefore the motion to dismiss is denied.

**3.** The complaint as drafted states in the copyright court a claim for relief directed solely against Fine Arts Sterling Silver, Inc. We must therefore face the question, whether the other three counts can be sustained against the individual defendants. The argument can certainly be made that as to the individual defendants the complaint should be dismissed because they are not responsible for the corporate defendant's alleged acts of infringement. This of course flies in the face of the facts alleged, which we must accept as true for the purposes of the motion to dismiss. The plaintiffs allege a conspiracy, although they have not specifically denominated it as such (except in count four), and under those conditions an agency relationship may be presumed. In addition, (and of greater significance) the "factual nucleus" of the cause of action is such that counts two through four must be sustained under the pendent jurisdiction doctrine as being "related". See Wilson v. American Chain & Cable Co., Inc., 364 F.2d 558 (3 Cir., August 3, 1966). (Opinion by Freedman, Circuit Judge.)